# EXHIBIT 1

REINSURANCE AGREEMENT
FACULTATIVE CASUALTY EXCESS OF LOSS FOR COMMON ACCOUNT
between

GERLING GLOBAL REINSURANCE CORPORATION
UNITED STATES BRANCH
NEW YORK, N.Y.

AND THEIR QUOTA SHARE REINSURERS

(hereinafter called the "Company")

of the one part

and

THE COMPANIES SPECIFIED IN THE RESPECTIVE INTERESTS AND
LIABILITIES AGREEMENT TO WHICH THIS AGREEMENT IS ATTACHED

(hereinafter called the "Reinsurer")

of the other part.

==========================================================================

WHEREAS the Company is desirous of reinsuring certain of its liability arising
under business accepted by it in its Facultative Casualty Department

NOW, THEREFORE, it is hereby agreed by and between the parties hereto one
with the other as respects Facultative Casualty business:

ARTICLE I

INSURING CLAUSE

(A)  The Reinsurer agrees for the consideration hereinafter appearing to pay
     to the Company up to but not exceeding $500,000 (Five Hundred Thousand
     Dollars) ultimate net loss each and every accident and/or occurrence any
     one original insured for which the Company shall become liable and shall
     pay in excess of $500,000 (Five Hundred Thousand Dollars) ultimate net
     loss each and every accident and/or occurrence any one original insured
     arising under the business hereby reinsured.

GERLING GLOBAL REINSURANCE CORPORATION
U. S. BRANCH

- 2 -

B] As respects Products Bodily Injury Liability Insurance assumed by the Company under Policies containing an aggregate limit of liability, the Reinsurer agrees to pay to the Company up to but not exceeding $500,000 (Five Hundred Thousand Dollars) aggregate ultimate net loss for which the Company shall become liable and shall pay in excess of $500,000 (Five Hundred Thousand Dollars) aggregate ultimate net loss in respect of each annual period of each original Policy.

The term "each and every accident and/or occurrence" as used herein shall be understood to mean "each and every accident or occurrence or series of accidents or occurrences arising out of any one event" provided that as respects:

(a) Products Liability; said term shall also be understood to mean "injuries to all persons and all damage to property of others proceeding from the use or consumption of one prepared or acquired lot of merchandise or product";

(b) All other classes of Bodily Injury Liability; said term shall also be understood to mean, as regards each original Insured, "injuries to one or more than one person resulting from infection, contagion, poisoning or contamination proceeding from or traceable to the same causative agency";

(c) Property Damage (other than Automobile and Products) risks; said term shall, subject to provisions (i) and (ii) below, also be understood to mean "loss or losses caused by a series of operations, events or occurrences arising out of operations at one specific site and which cannot be attributed to any single one of such operations, events or occurrences but rather to the cumulative effect of same".

In assessing each and every accident within the foregoing definition, it is understood and agreed that:

(i) the series of operations, events or occurrences shall not extend over a period longer than 12 (Twelve) consecutive months, and

(ii) the Reassured may elect the date on which the period of not exceeding 12 (Twelve) consecutive months shall be deemed to have commenced.

In the event that the series of operations, events or occurrences extend over a period longer than 12 (Twelve) consecutive months then each consecutive period of 12 (Twelve) months, the first of which commences on the date elected under (ii) above, shall form the basis of claim under this Agreement.

GERLING GLOBAL REINSURANCE CORPORATION
U. S. BRANCH

(d) An occupational or other disease suffered by an employee which disease arises out of the employment and for which the employer is liable shall be deemed an accident within the meaning hereof. In case the Company shall within a Policy year sustain several losses arising out of such an occupational or other disease of one specific kind or class, suffered by several employees of one Insured, such losses shall be deemed to arise out of one accident. A loss as respects each employee affected by the disease shall be deemed to have been sustained by the Company at the date when compensable disability of the employee commenced and at no other date.

## ARTICLE II

### RETENTION WARRANTY

It is a warranty hereof that the Company and its Quota Share Reinsurers will retain the underlying $500,000 (Five Hundred Thousand Dollars) ultimate net loss each and every accident and/or occurrence any one original insured mentioned in ARTICLE I subject to Excess of Loss Protection.

## ARTICLE III

### EXCLUSIONS

1. This Agreement shall specifically exclude coverage in respect of Policies of Reinsurance issued by the Company in respect of the following classes or classifications:

   (a) Aviation liability risks, except in cases where such Aviation liability risks are incorporated in a Policy covering Comprehensive or General Liability;

   (b) Railroads in respect of Bodily Injury Liability to third parties resulting from the transportation of freight and passengers only. It is agreed that it is the intention of this Agreement to cover, but not by way of limitation, Policies issued by the Company in respect of Railroads covering Contractual Liability or Railroads' Protective, or Owners' Protective, or Owners' and Contractors' Protective Insurance.

   (c) Excess Catastrophe Reinsurance Treaties of Insurance Companies;

   (d) Ocean Marine Business when written as such;

   (e) Nuclear risks as per attached wording;

   (f) Underground Coal Mining - But only as respects Excess Workmen's Compensation;

- 4 -

    (g)   Operation of Aircraft - but only as respects Excess Workmen's Compensation;

    (h)   Fireworks Manufacturers - but only as respects Excess Workmen's Compensation;

    (i)   Fuse Manufacturers - but only as respects Excess Workmen's Compensation;

    (j)   Explosive Risks - but only as respects Excess Workmen's Compensation;

    (k)   Risk of War, bombardment, invasion, insurrection, rebellion, revolution, military or usurped power or confiscation by order of any government or public authority as excluded under a standard policy containing a standard war exclusion clause.

2.   In the event the Company becomes interested in a prohibited risk as described above, without its knowledge, in respect of which no other Reinsurance arrangements are available to the Company, either by an existing Insured extending its operations or by an inadvertent acceptance by an Agent or otherwise of a Reinsured Company, this Agreement shall attach in respect to such prohibited risks but only until discovery by the Company and for not exceeding 30 (Thirty) days thereafter.

### ARTICLE IV

SPECIFIC RETROCESSIONS

Should the Company find it necessary or advisable for reasons of policy or accommodation to retrocede the whole or any part of any Policy otherwise than under this Agreement then the whole or such part of such Policy as is otherwise retroceded shall be absolutely excluded from this Agreement and the premium payable thereon shall be omitted from the premium declarable to Reinsurer hereunder.

It being understood and agreed that the Company shall submit to Reinsurer details of any Policy as and when they decide to otherwise retrocede such Policy from this Agreement.

### ARTICLE V

ATTACHMENT

This Agreement shall take effect from 12.01 a.m. 1st January, One Thousand Nine Hundred and Sixty Six, and shall apply to all losses occurring on and after that date and time.

- 5 -

Notwithstanding the above paragraph, the liability of the Reinsurer in respect of the aggregate coverage on occupational or other disease which is provided under paragraph (d) of ARTICLE I shall attach as of the effective date of Policies becoming effective on or after 1st January, One Thousand Nine Hundred and Sixty Six and as of the next renewal or anniversary date of Policies in force at Midnight, 31st December, One Thousand Nine Hundred and Sixty Six.

## ARTICLE VI

### CANCELLATION

This Agreement may be cancelled at Midnight 31st December, One Thousand Nine Hundred and Sixty Six and at any subsequent 31st December thereafter by either party giving the other at least 100 (One Hundred) days' notice in advance by registered mail.

Nevertheless, the Company at its sole option shall have the right to require this Agreement to continue to apply to all losses occurring on business in force during said period of 100 (One Hundred) days until their natural expiration or next annual anniversary date, whichever first occurs subject to the payment of the earned premium on such business.

Notwithstanding the second paragraph above, the liability of the Reinsurer in respect of the aggregate coverage on occupational or other disease which is provided under paragraph (d) of ARTICLE I shall continue until the next renewal or anniversary date, whichever first occurs, of Policies in force at the effective date of cancellation of this Agreement.

## ARTICLE VII

### PREMIUM

The Company shall pay to the Reinsurer premium calculated at 8% (Eight Percent) of its gross net earned premium income in respect of business accepted by the Company in its Facultative Casualty Department.

By "gross net earned premium income" is meant the earned proportion of the Company's gross written premium in respect of the subject matter of this Agreement less cancellations and return of premiums and premiums on Reinsurances which inure to the benefit of this Agreement.

The Company shall pay to the Reinsurer at 1st January, One Thousand Nine Hundred and Sixty Six and annually thereafter, Reinsurer's proportion of a Deposit Premium of $35,000 (Thirty Five Thousand Dollars). Should the premiums for each annual period calculated in accordance with the first paragraph of this Article exceed the said Deposit Premium for each annual period, the

- 6 -

Company agrees to pay the difference to the Reinsurer, but should it be less, there shall be no return of premium to the Company as said Deposit Premium of $35,000 (Thirty Five Thousand Dollars) shall be deemed to be the Minimum Premium for each annual period this Agreement is in force.

### ARTICLE VIII

ULTIMATE NET LOSS CLAUSE

"Ultimate Net Loss" shall mean the sum actually paid in cash in the settlement of losses for which the Company is liable, after deducting all salvages, recoveries and other reinsurance, provided, however, that in the event of the insolvency of the Company, "Ultimate Net Loss" shall mean the amount of loss which the insolvent Company has incurred or is liable for, and payment by the Reinsurer shall be made to the receiver or statutory successor of the Company in accordance with the provisions of ARTICLE XIII of this Reinsurance Agreement known as the "Insolvency Clause".

### ARTICLE IX

CLAIMS

The Company shall advise the Reinsurer with reasonable promptitude of any loss occurrence or event in which the Reinsurer is likely to be involved and shall provide the Reinsurer with full information relative thereto.

The Reinsurer, through its appointed representatives, shall have the right to co-operate with the Company in the defense and/or settlement of any claim or claims in which it may be interested. All settlements made by the Company in co-operation with the Reinsurer's appointed representatives shall be binding on the Reinsurer, and all settlements made by the Company in cases where the Reinsurer elects not to co-operate with the Company shall be binding on the Reinsurer.

The Company agrees that all papers connected with the adjustment of claims shall be at all times at the command of the Reinsurer or parties designated by it for inspection.

### ARTICLE X

DIVISION OF SETTLEMENT COSTS CLAUSE

Expenses incurred by the Company in connection with the investigation and adjustment of claims and suits shall be apportioned as follows:

(a) Should the claims or suits arising out of any one occurrence be adjusted for a sum not exceeding the amount in excess of which Reinsurer here-under becomes liable, then no expenses shall be payable by the Reinsurer;

GERLING GLOBAL REINSURANCE CORPORATION
U. S. BRANCH

- 7 -

(b) Should, however, the sum which is paid in adjustment of such claims or
    suits result in an amount being recovered under this Agreement, then the
    expenses shall be borne by the Company and the Reinsurer in the ratio
    of their respective liabilities as finally determined provided, however,
    that the Reinsurer shall not be liable for any part of the salaries of
    officials of or office expenses of the Company.

### ARTICLE XI

#### COMMUTATION

In the event of the Company becoming liable to make periodical payments
under any business reinsured hereunder, the Reinsurer at any time after 24
(Twenty Four) months from the date of the occurrence, shall be at liberty to
redeem the payments falling due from it by the payment of a lump sum.

In such event, the Company and the Reinsurer shall mutually appoint an
Actuary or Appraiser to investigate, determine and capitalize the claim. The
Reinsurer's proportion of the amount so determined shall be considered the
amount of loss hereunder and the payment thereof shall constitute a complete
release of the Reinsurer for its liability for such claim so capitalized.

### ARTICLE XII

#### ERRORS AND OMISSIONS

No accidental errors and/or omissions upon the part of the Company shall
relieve the Reinsurer of liability provided such errors and/or omissions
are rectified as soon after discovery as possible. Nevertheless, the Reinsurer
shall not be liable in respect of any business which may have been inadvertently
included in the premium computation but which ought not to have been included
by reason of the conditions of this Agreement.

### ARTICLE XIII

#### INSOLVENCY CLAUSE

In consideration of the continuing and reciprocal benefits to accrue here-
under to the Reinsurer, the Reinsurer hereby agrees that as to all reinsurance
made, ceded, renewed or otherwise becoming effective under this Agreement,
the reinsurance shall be payable by the Reinsurer on the basis of the lia-
bility of the Company under the contract or contracts reinsured, without
diminution because of the insolvency of the Company directly to the Company
or to its liquidator, receiver or other statutory successor, except as provided
by Section 315 of the New York Insurance Law or except (a) where the contract
specifically provides another payee of such reinsurance in the event of in-
solvency of the Company and (b) where the Reinsurer with the consent of the

- 8 -

direct Assured or Assureds has assumed such policy obligations of the Company as direct obligations of the Reinsurer to the payees under such policies and in substitution for the obligations of the Company to such payee.

It is further agreed and understood that in the event of insolvency of the Company, the liquidator or receiver or statutory successor of the insolvent Company shall give written notice to the Reinsurer of the pendency of a claim against the insolvent Company on the policy or bond reinsured with the Reinsurer within a reasonable time after such claim is filed in the insolvency proceeding; and that during the pendency of such claim the Reinsurer may investigate such claim and interpose, at its own expense, in the proceeding where such claim is to be adjudicated any defense or defenses which it may deem available to the Company or its liquidator or receiver or statutory successor. The expense thus incurred by the Reinsurer shall be chargeable subject to court approval against the insolvent Company as part of the expense of liquidation to the extent of a proportionate share of the benefit which may accrue to the Company solely as a result of the defense undertaken by the Reinsurer.

Where two or more Reinsurers are involved in the same claim and a majority in interest elect to interpose defense to such claim, the expense shall be apportioned in accordance with the terms of this Agreement as though such expense had been incurred by the Company.

### ARTICLE XIV

LEGALITY

It is specially provided, anything to the contrary notwithstanding, that if any law or regulation of the Federal or any State or Local Government of the United States or the decision of any Court shall render illegal the arrangements hereby made, this Agreement may be terminated immediately by the Company upon giving notice to the Reinsurer of such law or decision and of its intention to terminate this Agreement provided always that the Reinsurer cannot comply with such law or with the terms of such decisions.

### ARTICLE XV

ARBITRATION

As a precedent to any right of action hereunder, it is agreed that in the event of any dispute or difference hereafter arising with reference to any transaction under this Agreement, such dispute or difference shall be arbitrated either in the City of New York, N.Y., or some other location as is mutually agreed by the Company and the Reinsurer, by two Arbitrators, one chosen by the Company and one chosen by the Reinsurer, and an Umpire chosen by the Arbitrators. The written decision of the Arbitrators and the Umpire, or that of the majority of them, shall be final and binding on both parties without

- 9 -

appeal. Any and all expenses incurred on account of any arbitration shall be apportioned between the Company and the Reinsurer in the same proportion as the actual payments for losses are apportionable between them under the terms of this Agreement.

## ARTICLE XVI

### HONORABLE UNDERTAKING

This Agreement shall be construed as an honorable undertaking between the parties hereto not to be defeated by technical legal construction, it being the intention of this Agreement that the fortunes of the Reinsurer shall follow the fortunes of the Company.

## NUCLEAR INCIDENT EXCLUSION CLAUSE—LIABILITY—REINSURANCE

(1) This reinsurance does not cover any loss or liability accruing to the Company (ies) as a member of, or subscriber to, any association of insurers or reinsurers formed for the purpose of covering nuclear energy risks or as a direct or indirect reinsurer of any such member, subscriber or association.

(2) Without in any way restricting the operation of paragraph (1) of this Clause, it is understood and agreed that for all purposes of this reinsurance all the original policies of the Company (ies) (new, renewal and replacement) of the classes specified in Clause II of this paragraph (2) from the time specified in Clause III in this paragraph (2) shall be deemed to include the following provision (specified as the Limited Exclusion Provision) :

Limited Exclusion Provision.

    I. It is agreed that the policy does not apply under any liability coverage, to injury, sickness, disease, death or destruction with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability.

    II. Family Automobile Policies (liability only), Special Automobile Policies (private passenger automobiles, liability only), Farmers Comprehensive Personal Liability Policies (liability only), Comprehensive Personal Liability Policies (liability only) or policies of a similar nature; and the liability portion of combination forms related to the four classes of policies stated above, such as the Comprehensive Dwelling Policy and the applicable types of Homeowners Policies.

    III. The inception dates and thereafter of all original policies as described in II above, whether new, renewal or replacement, being policies which either

        (a) become effective on or after 1st May, 1960, or

        (b) become effective before that date and contain the Limited Exclusion Provision set out above;

provided this paragraph (2) shall not be applicable to Family Automobile Policies, Special Automobile Policies, or policies or combination policies of a similar nature, issued by the Company (ies) on New York risks, until 90 days following approval of the Limited Exclusion Provision by the Governmental Authority having jurisdiction thereof.

(3) Except for those classes of policies specified in Clause II of paragraph (2) and without in any way restricting the operation of paragraph (1) of this Clause, it is understood and agreed that for all purposes of this reinsurance the original liability policies of the Company (ies) (new, renewal and replacement) affording the following coverages:

    Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability (including Massachusetts Motor Vehicle or Garage Liability)

shall be deemed to include, with respect to such coverages, from the time specified in Clause V of this paragraph (3), the following provision (specified as the Broad Exclusion Provision) :

Broad Exclusion Provision.

    It is agreed that the policy does not apply:

    I. Under any Liability Coverage, to injury, sickness, disease, death or destruction

        (a) with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

        (b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

    II. Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

    III. Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if

        (a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;

        (b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

        (c) the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

IV. As used in this endorsement:

"hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means source material, special nuclear material or byproduct material; "source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof; "special fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; "waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof; "nuclear facility" means

(a) any nuclear reactor,

(b) any equipment or device designed or used for (1 separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste, and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

V. The inception dates and thereafter of all original policies affording coverages specified in this paragraph (3), whether new, renewal or replacement, being policies which either

(a) become effective on or after 1st May, 1960, or

(b) become effective before that date and contain the Broad Exclusion Provision set out above;

provided this paragraph (3) shall not be applicable to

(i) Garage and Automobile Policies issued by the Company(ies) on New York risks, or

(ii) statutory liability insurance required under Chapter 90, General Laws of Massachusetts,

until 90 days following approval of the Broad Exclusion Provision by the Governmental Authority having jurisdiction thereof.

It is further provided that original liability policies affording coverages described in this paragraph (3), (other than those policies and coverages described in (i) and (ii) above), which become effective before 1st May, 1960, and do not contain the Broad Exclusion Provision set out above, but which contain the Broad Exclusion Provision set out in any Nuclear Incident Exclusion Clause-Liability-Reinsurance endorsements prior to February 4, 1960, shall be construed as if incorporating such portions of the Broad Exclusion Provision set out above as are more liberal to the holders of such policies.

(4) Without in any way restricting the operation of paragraphs (1) of this clause it is understood and agreed that original liability policies of the Company(ies), for those classes of policies

(a) described in Clause II of paragraph (2) effective before 1st June, 1958, or

(b) described in paragraph (3) effective before 1st March, 1958,

shall be free until their natural expiry dates or 1st June, 1963, whichever first occurs, from the application of the other provisions of this Clause.

(5) Without in any way restricting the operation of paragraph (1) of this Clause, it is understood and agreed that paragraphs (2) and (3) above are not applicable to original liability policies of the Company(ies) in Canada and that with respect to such policies this Clause shall be deemed to include the Nuclear Energy Liability Exclusion Provisions actually used on such policies by the Company(ies); provided that if the Company(ies) shall fail to include such Exclusion Provisions in any such policy where it is legally permitted to do so, such policy shall be deemed to include such Exclusion Provisions.

2/4/60
#1255

GERLING GLOBAL REINSURANCE CORPORATION
U. S. BRANCH

U.S.A.

## NUCLEAR INCIDENT EXCLUSION CLAUSE—PHYSICAL DAMAGE—REINSURANCE.

1. This Reinsurance does not cover any loss or liability accruing to the Reassured, directly or indirectly and whether as Insurer or Reinsurer, from any Pool of Insurers or Reinsurers formed for the purpose of covering Atomic or Nuclear Energy risks.

2. Without in any way restricting the operation of paragraph (1) of this Clause, this Reinsurance does not cover any loss or liability accruing to the Reassured, directly or indirectly and whether as Insurer or Reinsurer, from any insurance against Physical Damage (including business interruption or consequential loss arising out of such Physical Damage) to:

   I.  Nuclear reactor power plants including all auxiliary property on the site, or

   II. Any other nuclear reactor installation, including laboratories handling radioactive materials in connection with reactor installations, and "critical facilities" as such, or

   III. Installations for fabricating complete fuel elements or for processing substantial quantities of "special nuclear material", and for reprocessing, salvaging, chemically separating, storing or disposing of "spent" nuclear fuel or waste materials, or

   IV. Installations other than those listed in paragraph (2) III above using substantial quantities of radioactive isotopes or other products of nuclear fission.

3. Without in any way restricting the operations of paragraphs (1) and (2) hereof, this Reinsurance does not cover any loss or liability by radioactive contamination accruing to the Reassured, directly or indirectly, and whether as Insurer or Reinsurer, from any insurance on property which is on the same site as a nuclear reactor power plant or other nuclear installation and which normally would be insured therewith except that this paragraph (3) shall not operate

   (a) where Reassured does not have knowledge of such nuclear reactor power plant or nuclear installation, or

   (b) where said insurance contains a provision excluding coverage for damage to property caused by or resulting from radioactive contamination, however caused. However on and after 1st January 1960 this sub-paragraph (b) shall only apply provided the said radioactive contamination exclusion provision has been approved by the Governmental Authority having jurisdiction thereof.

4. Without in any way restricting the operations of paragraphs (1), (2) and (3) hereof, this Reinsurance does not cover any loss or liability by radioactive contamination accruing to the Reassured, directly or indirectly, and whether as Insurer or Reinsurer, when such radioactive contamination is a named hazard specifically insured against.

5. It is understood and agreed that this Clause shall not extend to risks using radioactive isotopes in any form where the nuclear exposure is not considered by the Reassured to be the primary hazard.

6. The term "special nuclear material" shall have the meaning given it in the Atomic Energy Act of 1954 or by any law amendatory thereof.

7. Reassured to be sole judge of what constitutes:

   (a) substantial quantities, and

   (b) the extent of installation, plant or site.

Note.—Without in any way restricting the operation of paragraph (1) hereof, it is understood and agreed that

   (a) all policies issued by the Reassured on or before 31st December 1957 shall be free from the application of the other provisions of this Clause until expiry date or 31st December 1960 whichever first occurs whereupon all the provisions of this Clause shall apply,

   (b) with respect to any risk located in Canada policies issued by the Reassured on or before 31st December 1958 shall be free from the application of the other provisions of this Clause until expiry date or 31st December 1960 whichever first occurs whereupon all the provisions of this Clause shall apply.

ADDENDUM NO. 1

to the

## FACULTATIVE CASUALTY EXCESS OF LOSS FOR COMMON ACCOUNT
### FIRST EXCESS OF LOSS $500,000 EXCESS $500,000

between

GERLING GLOBAL REINSURANCE CORPORATION
UNITED STATES BRANCH
NEW YORK, N.Y.

AND THEIR QUOTA SHARE REINSURERS

(hereinafter called the "Company")

of the one part

and

THE COMPANIES SPECIFIED IN THE RESPECTIVE INTERESTS AND
LIABILITIES AGREEMENT TO WHICH THIS AGREEMENT IS ATTACHED

(hereinafter called the "Reinsurer")

of the other part

IT IS UNDERSTOOD AND AGREED  that

1.  ARTICLE VI shall be amended to read as follows:

> This agreement may be cancelled at mid-night, December 31, 1966 or at any subsequent December 31 thereafter, by either party giving the other at least 100 (One Hundred) days' prior written notice by registered mail.
>
> In the event of cancellation this agreement shall terminate on the effective date of such cancellation and shall not cover any accident or occurrence which happens on or after such effective date of cancellation.

2.  IT IS FURTHER UNDERSTOOD AND AGREED that the Company shall furnish to the Reinsurer a recapitulation showing a list of all unpaid claims as of the close of each calendar quarter, indicating the date of loss, the gross reserve, and the Reinsurer's share thereof.

> In the event of the Company requiring a cash advance and/or advances in respect of such unpaid claims, the Reinsurer hereby agrees to advance to the Company cash in an amount not to exceed the Reinsurer's share of any such unpaid claims.

GERLING GLOBAL REINSURANCE CORPORATION
U. S. BRANCH

(continued)

- 2 -

In the event that the Company shall require a cash advance and/or advances in respect of such unpaid claims, the Company agrees to pay to the Reinsurer interest calculated at 3% (Three Percent) per annum on cash advanced by the Reinsurer under the above arrangement.

All other terms and conditions shall be unchanged.

GERLING GLOBAL REINSURANCE CORPORATION
U. S. BRANCH

GERLING GLOBAL REINSURANCE CORPORATION
UNITED STATES BRANCH
NEW YORK, N.Y.

FACULTATIVE CASUALTY EXCESS OF LOSS FOR COMMON ACCOUNT

(First Excess $500,000 Excess $500,000)

INTERESTS AND LIABILITIES AGREEMENT

IT IS HEREBY MUTUALLY AGREED, by and between GERLING GLOBAL REINSURANCE CORPORA-
TION, U. S. BRANCH, (hereafter called the "COMPANY"), of the one part, and

GUARANTY REINSURANCE COMPANY

(hereafter called the "SUBSCRIBING REINSURER"), of the other part, that the
SUBSCRIBING REINSURER shall have a    % share in the interests and liabilities
of the "REINSURERS" as set forth in the document attached hereto, entitled
FACULTATIVE CASUALTY EXCESS OF LOSS FOR COMMON ACCOUNT.  The share of the
SUBSCRIBING REINSURER shall be separate and apart from the share of the other
reinsurers, and shall not be joint with those of the other reinsurers, and the
SUBSCRIBING REINSURER shall in no event participate in the interests and lia-
bilities of the other reinsurers.

This Agreement is concluded for the period set forth in the attached Agreement.

IN WITNESS WHEREOF the parties hereto, by their respective duly authorized
officers, have executed this Agreement, in duplicate, as of the dates under-
mentioned.

At New York, N. Y. this _____ day of _____, 1966

GERLING GLOBAL REINSURANCE CORPORATION, U. S. BRANCH
By
GERLING GLOBAL OFFICES INC., U. S. MANAGER

Executive                Assistant
and at Chicago, Illinois this    13th    day of    March    , 1966
                                         GUARANTY REINSURANCE COMPANY

Assistant Secretary        GERLING GLOBAL REINSURANCE CORPORATION
                           U. S. BRANCH                              President

GERLING GLOBAL REINSURANCE CORPORATION
UNITED STATES BRANCH
NEW YORK, N.Y.


FACULTATIVE CASUALTY EXCESS OF LOSS FOR COMMON ACCOUNT

(First Excess $500,000 Excess $500,000)


INTERESTS AND LIABILITIES AGREEMENT


IT IS HEREBY MUTUALLY AGREED, by and between GERLING GLOBAL REINSURANCE CORPORA-
TION, U. S. BRANCH, (hereafter called the "COMPANY"), of the one part, and

GUARANTY REINSURANCE COMPANY

(hereafter called the "SUBSCRIBING REINSURER"), of the other part, that the
SUBSCRIBING REINSURER shall have a 10 % share in the interests and liabilities
of the "REINSURERS" as set forth in the document attached hereto, entitled
FACULTATIVE CASUALTY EXCESS OF LOSS FOR COMMON ACCOUNT. The share of the
SUBSCRIBING REINSURER shall be separate and apart from the share of the other
reinsurers, and shall not be joint with those of the other reinsurers, and the
SUBSCRIBING REINSURER shall in no event participate in the interests and lia-
bilities of the other reinsurers.

This Agreement is concluded for the period set forth in the attached Agreement.


IN WITNESS WHEREOF the parties hereto, by their respective duly authorized
officers, have executed this Agreement, in duplicate, as of the dates under-
mentioned.

At New York, N. Y. this __9th__ day of ___September___, 1966

GERLING GLOBAL REINSURANCE CORPORATION, U. S. BRANCH
By
GERLING GLOBAL OFFICES INC., U. S. MANAGER


_____          _____
Executive Vice President                    Assistant Secretary
and at __Chicago, Illinois__ this __13th__ day of ___March___, 1966

                                            GUARANTY REINSURANCE COMPANY
_____
Assistant Secretary          GERLING GLOBAL REINSURANCE CORPORATION      _____
                                    U. S. BRANCH                          President

ADDENDUM NO. 1

to the

INTERESTS AND LIABILITIES AGREEMENT

of the

GUARANTY REINSURANCE COMPANY

(hereafter called the "Subscribing Reinsurer")

with respect to

GERLING GLOBAL REINSURANCE CORPORATION - U. S. BRANCH, NEW YORK, N. Y.

(hereafter called the "Company")
FACULTATIVE CASUALTY EXCESS OF LOSS FOR COMMON ACCOUNT
<u>FIRST EXCESS OF LOSS $500,000 Excess $500,000</u>



IT IS UNDERSTOOD AND AGREED that Addendum No. 1 attached hereto shall be
part of the Reinsurance Agreement ~~and the subscribing Reinsurer shall have~~
~~a 10% share in the interest and liabilities of the reinsurer.~~

IN WITNESS WHEREOF the parties hereto, by their respective duly authorized
officers, have executed this Agreement, in duplicate as of the dates under-
mentioned.

At New York, N. Y., ~~this~~ _____ da~~y of September~~ _____, 1966

GERLING GLOBAL REINSURANCE CORPORATION - U. S. BRANCH
By
GERLING GLOBAL OFFICES INC., - U. S. MANAGER


_____          _____
Executive Vice President                  Assistant Secretary

and at ___Chicago, Illinois___     this __13th__ day of ___March___, 1966

                                          GUARANTY REINSURANCE COMPANY
_____          By: _____
Assistant Secretary                                        President

ADDENDUM NO. 1

to the

INTERESTS AND LIABILITIES AGREEMENT

of the

GUARANTY REINSURANCE COMPANY

(hereafter called the "Subscribing Reinsurer")

with respect to

GERLING GLOBAL REINSURANCE CORPORATION - U. S. BRANCH, NEW YORK, N. Y.

(hereafter called the "Company")

FACULTATIVE CASUALTY EXCESS OF LOSS FOR COMMON ACCOUNT
FIRST EXCESS OF LOSS $500,000 Excess $500,000

IT IS UNDERSTOOD AND AGREED that Addendum No. 1 attached hereto shall be
part of the Reinsurance Agreement. ~~of the Subscribing Reinsurer shall have~~
~~a 50% share in the interests and liabilities of the company~~

IN WITNESS WHEREOF the parties hereto, by their respective duly authorized
officers, have executed this Agreement, in duplicate as of the dates under-
mentioned.

At New York, N. Y., this _____ day of _____, 1966

GERLING GLOBAL REINSURANCE CORPORATION - U. S. BRANCH
By
GERLING GLOBAL OFFICES INC.,- U. S. MANAGER


and at  Chicago, Illinois      this    13th   day of    March    , 1966

                                        GUARANTY REINSURANCE COMPANY

Assistant Secretary                     By:                    President

ADDENDUM NO. *1 2* 🖊 *C*

to the

INTERESTS AND LIABILITIES AGREEMENT of the
FACULTATIVE CASUALTY EXCESS OF LOSS FOR COMMON ACCOUNT

between

GERLING GLOBAL REINSURANCE CORPORATION
U.S. BRANCH, New York, N.Y.
(including the liability of the GLOBAL REINSURANCE COMPANY
Toronto, Canada)

and

GUARANTY REINSURANCE COMPANY, Chicago, Illinois

IT IS HEREBY UNDERSTOOD AND AGREED that the third paragraph of ARTICLE VII,
Premium, of the attached Agreement is deleted and the following paragraph
substituted:

> The Company shall pay to the Reinsurer at 1st January, One
> Thousand Nine Hundred and Sixty Seven and annually thereafter,
> Reinsurer's proportion of a Deposit Premium of $50,000 (Fifty
> Thousand Dollars). Should the premiums for each annual period
> calculated in accordance with the first paragraph of this Article
> exceed the said Deposit Premium for each annual period, the Com-
> pany agrees to pay the difference to the Reinsurer, but should
> it be less, it is agreed that the Minimum Premium payable to
> the Reinsurer shall be its proportion of $35,000 (Thirty Five
> Thousand Dollars) for each annual period this Agreement is in
> force.

All other terms and conditions shall be unchanged.

IN WITNESS WHEREOF the parties hereto, by their respective duly authorized
officers, have executed this Agreement, in duplicate, as of the dates under-
mentioned.

At New York, N.Y. this **22nd** day of __June__, 1967

GERLING GLOBAL REINSURANCE CORPORATION, U.S. BRANCH
By
GERLING GLOBAL OFFICES INC., U.S. MANAGER

_____                    _____
Executive Vice President                    Assistant Vice President

and at **Chicago, Illinois**    this    **27th** day of **June**, 19**67**.
                                        GUARANTY REINSURANCE COMPANY
_____                    By_____
Assistant Secretary                                        President.

ADDENDUM NO. 2 A

to the

INTERESTS AND LIABILITIES AGREEMENT OF THE
FACULTATIVE CASUALTY EXCESS OF LOSS FOR COMMON ACCOUNT

between

GERLING GLOBAL REINSURANCE CORPORATION
U.S. BRANCH, New York, N.Y.
(including the liability of the GLOBAL REINSURANCE COMPANY
Toronto, Canada)

and

GUARANTY REINSURANCE COMPANY, Chicago, Illinois

IT IS HEREBY UNDERSTOOD AND AGREED that the third paragraph of ARTICLE VII,
Premium, of the attached Agreement is deleted and the following paragraph
substituted:

> The Company shall pay to the Reinsurer at 1st January, One
> Thousand Nine Hundred and Sixty Eight and annually thereafter,
> Reinsurer's proportion of a Deposit Premium of $75,000 (Seventy-
> five Thousand Dollars). Should the premium for each annual period
> calculated in accordance with the first paragraph of this Article
> exceed the said Deposit Premium for each annual period, the Com-
> pany agrees to pay the difference to the Reinsurer, but should
> it be less, it is agreed that the Minimum Premium payable to
> the Reinsurer shall be its proportion of $50,000 (Fifty Thousand
> Dollars) for each annual period this Agreement is in force.

All other terms and conditions shall be unchanged.

IN WITNESS WHEREOF the parties hereto, by their respective duly authorized
officers, have executed this Agreement, in duplicate, as of the dates under-
mentioned.

At New York, N.Y. this 24th day of     April          19 68

GERLING GLOBAL REINSURANCE CORPORATION, U.S. BRANCH
By GERLING GLOBAL OFFICES INC., U.S. MANAGER

_____        _____
Executive Vice President                Secretary

and at _____        this ___ day of _____ 1968

_____        _____

GERLING GLOBAL REINSURANCE CORPORATION
U. S. BRANCH

4603

*1966 - 1968*

CANCELLATION ADDENDUM

to the

INTERESTS AND LIABILITIES AGREEMENT of the
FACULTATIVE CASUALTY EXCESS OF LOSS FOR COMMON ACCOUNT

First Excess of Loss $500,000 excess of $500,000

between

GERLING GLOBAL REINSURANCE CORPORATION
U.S. BRANCH, New York, N.Y.
(including the liability of the GLOBAL REINSURANCE COMPANY
Toronto, Canada)

(hereinafter collectively called the "COMPANY") of the one part,

and

Guaranty Reinsurance Company, Chicago, Ill.

(hereinafter called the "SUBSCRIBING REINSURER") of the other part.

IT IS HEREBY UNDERSTOOD AND AGREED that in accordance with
Article VI this Agreement which incepted for the Subscribing
Retrocessionaire on January 1, 196 , is terminated as at Midnight
December 31, 1968.

IN WITNESS WHEREOF the parties hereto, by their respective duly
authorized officers, have executed this Agreement, in duplicate, as of
the dates undermentioned.

At New York, N.Y. this 5th day of May, 1969

GERLING GLOBAL REINSURANCE CORPORATION, U.S. BRANCH
By
GERLING GLOBAL OFFICES INC., U.S. MANAGER

President                          Secretary

and at _Chicago_ this 22 day of _May_ 1969

GERLING GLOBAL REINSURANCE CORPORATION
U.S. BRANCH

4603

GERLING GLOBAL REINSURANCE CORPORATION, UNITED STATES BRANCH
NEW YORK, N. Y.

FACULTATIVE CASUALTY EXCESS OF LOSS FOR COMMON ACCOUNT
First Excess – $500,000 Excess $500,000

INTERESTS AND LIABILITIES AGREEMENT

IT IS HEREBY MUTUALLY AGREED, by and between GERLING GLOBAL
REINSURANCE CORPORATION, U.S. BRANCH, AND THEIR QUOTA SHARE
REINSURERS, (hereinafter collectively called the "COMPANY"), of the one
part, and

GUARANTY REINSURANCE COMPANY, Chicago, Illinois

(hereinafter called the "SUBSCRIBING REINSURER"), of the other part, that
the SUBSCRIBING REINSURER shall have a      10 %  ( Ten Per Centum
) share in the interests and liabilities of the "REINSURER" as set
forth in the document attached hereto, entitled FACULTATIVE CASUALTY
EXCESS OF LOSS FOR COMMON ACCOUNT, First Excess – $500,000
Excess $500,000.  The share of the SUBSCRIBING REINSURER shall be
separate and apart from the share of the other reinsurers, and shall not be
joint with those of the other reinsurers, and the SUBSCRIBING REINSURER
shall in no event participate in the interests and liabilities of the other
reinsurers.

This Agreement shall take effect at 12:01 a.m. 1st January, One Thousand
Nine Hundred and Sixty Nine and may be cancelled as per the attached Agree-
ment.

IN WITNESS WHEREOF the parties hereto, by their respective duly authorized
officers, have executed this Agreement, in duplicate, as of the dates under-
mentioned.

At New York, New York  this  19th day of   March          1969

GERLING GLOBAL REINSURANCE CORPORATION, U.S. BRANCH
By GERLING GLOBAL OFFICES INC., U.S. MANAGER

_____          _____
Executive Vice President                Secretary

and at  Chicago   this  22 day of  May      1969

_____          _____
                                GERLING GLOBAL REINSURANCE CORPORATION
                                U. S. BRANCH

## REINSURANCE AGREEMENT

## FACULTATIVE CASUALTY EXCESS OF LOSS FOR COMMON ACCOUNT
### First Excess - $500,000 Excess $500,000

between

GERLING GLOBAL REINSURANCE CORPORATION, UNITED STATES
BRANCH, NEW YORK, N.Y., (including the liability of GLOBAL
REINSURANCE COMPANY, TORONTO, ONTARIO, CANADA)

AND THEIR QUOTA SHARE REINSURERS

(hereinafter collectively called the "Company")

of the one part

and

THE COMPANIES SPECIFIED IN THE RESPECTIVE INTERESTS AND
LIABILITIES AGREEMENT TO WHICH THIS AGREEMENT IS ATTACHED

(hereinafter called the "Reinsurer")

of the other part

---

WHEREAS the Company is desirous of reinsuring certain of its liability
arising under business accepted by it in its Facultative Casualty Depart-
ment

NOW, THEREFORE, it is hereby agreed by and between the parties hereto
one with the other as respects Facultative Casualty business:

GERLING GLOBAL REINSURANCE CORPORATION
U. S. BRANCH

- 2 -

## ARTICLE 1

### INSURING CLAUSE

(A) The Reinsurer agrees for the consideration hereinafter appearing to pay to the Company up to but not exceeding $500,000 (Five Hundred Thousand Dollars) ultimate net loss each and every accident and/or occurrence any one original insured for which the Company shall become liable and shall pay in excess of $500,000 (Five Hundred Thousand Dollars) ultimate net loss each and every accident and/or occurrence any one original insured under one or more original policies.

(B) As respects Products Bodily Injury Liability Insurance assumed by the Company under Policies containing an aggregate limit of liability, the Reinsurer agrees to pay to the Company up to but not exceeding $500,000 (Five Hundred Thousand Dollars) aggregate ultimate net loss for which the Company shall become liable and shall pay in excess of $500,000 (Five Hundred Thousand Dollars) aggregate ultimate net loss in respect of each annual period any one original insured under one or more original policies

The term "each and every accident and/or occurrence" as used herein shall be understood to mean "each and every accident or occurrence or series of accidents or occurrences arising out of any one event" provided that as respects:

(a) Products Liability; said term shall be understood to mean "injuries to all persons and all damage to property of others proceeding from the use or consumption of one prepared or acquired lot of merchandise or product";

(b) All other classes of Bodily Injury Liability; said term shall also be understood to mean, as regards each original insured, "injuries to one or more than one person resulting from infection, contagion, poisoning or contamination proceeding from or traceable to the same causative agency";

(c) Property Damage (other than Automobile and Products) risks; said term shall, subject to provisions (i) and (ii) below, also be understood to mean "loss or losses caused by a series of operations, events or occurrences arising out of operations at one specific site and which cannot be attributed to any single one of such operations, events or occurrences but rather to the cumulative effect of same".

- 3 -

In assessing each and every accident and/or occurrence within the fore-going definition, it is understood and agreed that:

(i) the series of operations, events or occurrences shall not extend over a period longer than 12 (Twelve) consecutive months, and

(ii) the Company may elect the date on which the period of not exceed-ing 12 (Twelve) consecutive months shall be deemed to have commenced.

In the event that the series of operations, events or occurrences extend over a period longer than 12 (Twelve) consecutive months, then each consecutive period of 12 (Twelve) months, the first of which commences on the date elected under (ii) above, shall form the basis of claim under this Agreement.

(d) An occupational or other disease suffered by an employee which disease arises out of the employment and for which the employer is liable shall be deemed an accident within the meaning hereof. In case the Company shall within a Policy year sustain several losses arising out of such an occupational or other disease of one specific kind or class, suffered by several employees of one Insured, such losses shall be deemed to arise out of one accident. A loss as respects each employee affected by the disease shall be deemed to have been sustained by the Company at the date when compensable disability of the employee commenced and at no other date.

## ARTICLE II

## UNDERLYING REINSURANCE AND CO-REINSURANCE

(A) The Company is hereby granted permission to carry underlying excess of loss reinsurance, it being understood and agreed that in calculating the amount of any loss hereunder, and also in computing the amount in excess of which this Agreement attaches, the net loss of the Company shall not be considered as being reduced by any amount or amounts recoverable thereunder.

(B) It is a warranty that the Company and its quota share reinsurers shall participate to the extent of 5% (Five percent) in this Agreement.

- 4 -

## ARTICLE III

### EXCLUSIONS

1.  This Agreement shall specifically exclude coverage in respect of Policies of Reinsurance issued by the Company in respect of the following classes or classifications:

    (a)  Aviation liability risks, except in cases where such Aviation liability risks are incorporated in a Policy covering Comprehensive or General Liability;

    (b)  Railroads in respect of Bodily Injury Liability to third parties resulting from the transportation of freight and passengers only. It is agreed that it is the intention of this Agreement to cover, but not by way of limitation, Policies issued by the Company in respect of Railroads covering Contractual Liability or Railroads' Protective, or Owners' Protective, or Owners' and Contractors' Protective Insurance.

    (c)  Excess Catastrophe Reinsurance Treaties of Insurance Companies;

    (d)  Ocean Marine Business when written as such;

    (e)  Directors' and Officers' legal liability;

    (f)  Underground Coal Mining - but only as respects Excess Workmen's Compensation;

    (g)  Operation of Aircraft - but only as respects Excess Workmen's Compensation;

    (h)  Fireworks Manufacturers - but only as respects Excess Workmen's Compensation;

    (i)  Fuse Manufacturers - but only as respects Excess Workmen's Compensation;

    (j)  Explosive Risks - but only as respects Excess Workmen's Compensation;

    (k)  Risk of War, Bombardment, invasion, insurrection, rebellion, revolution, military or usurped power or confiscation by order of any government or public authority as excluded under a standard policy containing a standard war exclusion clause.

- 5 -

(1)   Nuclear risks as per attached wording.

2.     In the event the Company becomes interested in a prohibited risk other than (1) described above, without its knowledge, in respect of which no other Reinsurance arrangements are available to the Company, either by an existing Insured extending its operations or by an inadvertent acceptance by an Agent or otherwise of a Reinsured Company, this Agreement shall attach in respect to such prohibited risks but only until discovery by the Company and for not exceeding 30 (Thirty) days thereafter.

## ARTICLE IV

### ATTACHMENT

This Agreement shall take effect at the date and time specified in the Interests and Liabilities Agreement attached hereto and shall apply to all losses occurring on and after that date and time.

Notwithstanding the above paragraph, the liability of the Reinsurer in respect of the aggregate coverage on occupational or other disease which is provided under paragraph (d) of Article I shall attach as of the effective date of Policies becoming effective on or after the date and time specified in the Interests and Liabilities Agreement and as of the next renewal or anniversary date of Policies in force at Midnight, 31st December of the year of attachment.

## ARTICLE V

### CANCELLATION

This Agreement may be cancelled at Midnight any December 31st by either party giving the other at least 100 (One Hundred) days' notice in advance by registered mail.

Nevertheless, the Company at its sole option shall have the right to require this Agreement to continue to apply to all losses occurring on business in force during said period of 100 (One Hundred) days until their natural expiration or next anniversary date, whichever first occurs subject to the payment of the earned premium on such business.

Notwithstanding the second paragraph above, the liability of the Reinsurer in respect of the aggregate coverage on occupational or other disease which is provided under paragraph (d) of Article I shall continue until the next renewal or anniversary date, whichever first occurs, of Policies in force

- 6 -

at the effective date of cancellation of this Agreement.

## ARTICLE VI

### PREMIUM

The Company shall pay to the Reinsurer premium calculated at 8% (Eight Percent) of its gross net earned premium income in respect of business accepted by the Company in its Facultative Casualty Department.

By "gross net earned premium income" is meant the earned proportion of the Company's gross written premium in respect of the subject matter of this Agreement less cancellations and return of premium and premiums on Reinsurances which inure to the benefit of this Agreement.

The Company shall pay to the Reinsurer, in quarterly installments, Reinsurer's proportion of an annual Minimum and Deposit Premium of $120,000 (One Hundred Twenty Thousand Dollars). Should the premium for each annual period calculated in accordance with the first paragraph of this Article exceed the said Minimum and Deposit Premium for each annual period, the Company agrees to pay the difference to the Reinsurer.

## ARTICLE VII

### ULTIMATE NET LOSS CLAUSE

"Ultimate Net Loss" shall mean the sum actually paid in cash in the settlement of losses for which the Company is liable, after deducting all salvages, recoveries and other reinsurance provided, however, that in the event of the insolvency of the Company, "Ultimate Net Loss" shall mean the amount of loss which the insolvent Company has incurred or is liable for, and payment by the Reinsurer shall be made to the receiver or statutory successor of the Company in accordance with the provisions of ARTICLE XII, of this Reinsurance Agreement known as the "Insolvency Clause".

## ARTICLE VIII

### CLAIMS

The Company shall advise the Reinsurer with reasonable promptitude of any loss occurrence or event in which the Reinsurer is likely to be involved and shall provide the Reinsurer with full information relative thereto.

- 7 -

The Reinsurer, through its appointed representatives, shall have the right to co-operate with the Company in the defense and/or settlement of any claim or claims in which it may be interested. All settlements made by the Company in co-operation with the Reinsurer's appointed representatives shall be binding on the Reinsurer, and all settlements made by the Company in cases where the Reinsurer elects not to co-operate with the Company shall be binding on the Reinsurer.

The Company agrees that all papers connected with the adjustment of claims shall at any reasonable time be at the command of the Reinsurer or parties designated by it for inspection.

Reinsurers not authorized to do business in the State of New York shall upon request make cash advances for losses incurred but not paid in an amount not to exceed the Reinsurer's share of such unpaid claims. Cash advances shall be made within 10 (Ten) days after notification by the Company.

ARTICLE IX.

DIVISION OF SETTLEMENT COSTS CLAUSE

Expenses incurred by the Company in connection with the investigation and adjustment of claims and suits shall be apportioned as follows:

(a) Should the claims or suits arising out of any one occurrence be adjusted for a sum not exceeding the amount in excess of which Reinsurer hereunder become liable, then no expenses shall be payable by the Reinsurer;

(b) Should, however, the sum which is paid in adjustment of such claims or suit result in an amount being recovered under this Agreement, then the expenses shall be borne by the Company and the Reinsurer in the ratio of their respective liabilities as finally determined provided, however, that the Reinsurer shall not be liable for any part of the salaries of officials of or office expenses of the Company.

ARTICLE X

COMMUTATION

In the event of the Company becoming liable to make periodical payments under any business reinsured hereunder, the Reinsurer at any time after 24 (Twenty Four) months from the date of the occurrence, shall be at liberty to redeem the payments falling due from it by the payment of a lump sum.

- 8 -

In such event, the Company and the Reinsurer shall mutually appoint an Actuary or Appraiser to investigate, determine and capitalize the claim. The Reinsurer's proportion of the amount so determined shall be considered the amount of loss hereunder and the payment thereof shall constitute a complete release of the Reinsurer for its liability for such claim so capitalized.

## ARTICLE XI

### ERRORS AND OMISSIONS

No accidental errors and/or omissions upon the part of the Company shall relieve the Reinsurer of liability provided such errors and/or omissions are rectified as soon after discovery as possible. Nevertheless, the Reinsurer shall not be liable in respect of any business which may have been inadvertently included in the premium computation but which ought not to have been included by reason of the conditions of this Agreement.

## ARTICLE XII

### INSOLVENCY CLAUSE

In consideration of the continuing and reciprocal benefits to accrue hereunder to the Reinsurer, the Reinsurer hereby agrees that as to all reinsurance made, ceded, renewed or otherwise becoming effective under this Agreement, the reinsurance shall be payable by the Reinsurer on the basis of the liability of the Company under the contract or contracts reinsured, without diminution because of the insolvency of the Company directly to the Company or to its liquidator, receiver or other statutory successor, except as provided by Section 315 of the New York Insurance Law or except (a) where the contract specifically provides another payee of such reinsurance in the event of insolvency of the Company and (b) where the Reinsurer with the consent of the direct Assured or Assureds has assumed such policy obligations of the Company as direct obligations of the Reinsurer to the payees under such policies and in substitution for the obligations of the Company to such payee.

It is further agreed and understood that in the event of insolvency of the Company, the liquidator or receiver or statutory successor of the insolvent Company shall give written notice to the Reinsurer of the pendency of a claim against the insolvent Company on the policy or bond reinsured with the Reinsurer within a reasonable time after such claim is filed in the insolvency proceeding; and that during the pendency of such claim the Reinsurer may investigate such claim and interpose, at its own expense, in the proceeding where such claim is to be adjudicated any defense or defenses which it may deem

- 9 -

available to the Company or its liquidator or receiver or statutory successor. The expense thus incurred by the Reinsurer shall be chargeable subject to court approval against the insolvent Company as part of the expense of liqui- dation to the extent of a proportionate share of the benefit which may accrue to the Company solely as a result of the defense undertaken by the Reinsurer.

Where two or more Reinsurers are involved in the same claim, and a majority in interest elect to interpose defense to such claim, the expense shall be apportioned in accordance with the terms of this Agreement as though such expense had been incurred by the Company.

## ARTICLE XIII

### LEGALITY

It is specially provided, anything to the contrary notwithstanding, that if any law or regulation of the Federal or any State or Local Government of the United States or the decision of any Court shall render illegal the arrange- ments hereby made, this Agreement may be terminated immediately by the Company upon giving notice to the Reinsurer of such law or decision and of its intention to terminate this Agreement provided always that the Reinsurer cannot comply with such law or with the terms of such decisions.

## ARTICLE XIV

### ARBITRATION

(a) Any dispute or difference hereafter arising with reference to the interpretation, application or effect of this Reinsurance Agreement or any part thereof, whether arising before or after termination of the Reinsurance Agreement, shall be referred to a Board of Arbitration consisting of two (2) arbitrators and an umpire, who shall be active or retired officers of Insurance or Reinsurance Companies. The seat of the Board of Arbitration shall be in New York unless the disputants agree otherwise.

(b) One (1) arbitrator shall be chosen by the Company and the other by the Reinsurer. The umpire shall be chosen by the two (2) arbitrators.

(c) Arbitration shall be initiated by either the Company or the Reinsurer (the petitioner) demanding arbitration and naming its arbitrator. The other party (the respondent) shall then have thirty (30) days, after receiving demand in writing from the petitioner, within which to designate its arbitrator. In case the respondent fails to designate

- 10 -

its arbitrator within the time stated above, the petitioner is expressly authorized and empowered to name the second arbitrator, and the respondent shall not be deemed aggrieved thereby. The arbitrators shall designate an umpire within thirty (30) days after both arbitrators have been named. In the event the two (2) arbitrators do not agree within thirty (30) days on the selection of an umpire, each shall nominate one (1) umpire. Within thirty (30) days thereafter the selection shall be made by drawing lots. The name of the party first drawn shall be the umpire.

(d) Each party shall submit its case to the Board of Arbitration within thirty (30) days from the date of the appointment of the umpire, but this period of time may be extended by unanimous consent, in writing, of the Board. The Board shall interpret this Reinsurance Agreement as an honorable engagement rather than as a merely technical legal obligation and shall make its award with a view to effecting the general purpose of this Reinsurance Agreement in a reasonable manner, rather than in accordance with the literal interpretation of the language. It shall be relieved from all judicial formalities and may abstain from following the strict rules of law. The decision in writing of the Board or a majority of the Board rendered at the earliest convenient date shall be final and binding upon all parties.

(e) The Company and the Reinsurer shall each pay the fee of its own arbitrator and half the fee of the umpire, and the remaining costs of the arbitration shall be paid as the Board shall direct. In the event both arbitrators are chosen by the petitioner, as provided in paragraph (C) above, the Company and the Reinsurer shall each pay one half (1/2) of the fees of both of the arbitrators and the umpire, and the remaining costs of the arbitrations shall be paid as the Board shall direct.

## ARTICLE XV

## HONORABLE UNDERTAKING

This Agreement shall be construed as an honorable undertaking between the parties hereto not to be defeated by technical legal construction, it being the intention of this Agreement that the fortunes of the Reinsurer shall follow the fortunes of the Company.

*******************

## NUCLEAR INCIDENT EXCLUSION CLAUSE—LIABILITY—REINSURANCE

(1) This reinsurance does not cover any loss or liability accruing to the Company(ies) as a member of, or subscriber to, any association of insurers or reinsurers formed for the purpose of covering nuclear energy risks or as a direct or indirect reinsurer of any such member, subscriber or association.

(2) Without in any way restricting the operation of paragraph (1) of this Clause it is understood and agreed that for all purposes of this reinsurance all the original policies of the Company(ies) (new, renewal and replacement) of the classes specified in Clause II of this paragraph (2) from the time specified in Clause III in this paragraph (2) shall be deemed to include the following provision (specified as the Limited Exclusion Provision):

Limited Exclusion Provision.

    I. It is agreed that the policy does not apply under any liability coverage, to injury, sickness, disease, death or destruction with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability.

    II. Family Automobile Policies, (liability only), Special Automobile Policies (private passenger automobiles, liability only), Farmers Comprehensive Personal Liability Policies (liability only), Comprehensive Personal Liability Policies (liability only) or policies of a similar nature; and the liability portion of combination forms related to the four classes of policies stated above, such as the Comprehensive Dwelling Policy and the applicable types of Homeowners Policies.

    III. The inception dates and thereafter of all original policies as described in II above, whether new, renewal or replacement, being policies which either

        (a) become effective on or after 1st May, 1960, or

        (b) become effective before that date and contain the Limited Exclusion Provision set out above;

provided this paragraph (2) shall not be applicable to Family Automobile Policies, Special Automobile Policies, or policies or combination policies of a similar nature, issued by the Company(ies) on New York risks, until 90 days following approval of the Limited Exclusion Provision by the Governmental Authority having jurisdiction thereof.

(3) Except for those classes of policies specified in Clause II of paragraph (2) and without in any way restricting the operation of paragraph (1) of this Clause, it is understood and agreed that for all purposes of this reinsurance the original liability policies of the Company(ies) (new, renewal and replacement) affording the following coverages:

Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability (including Massachusetts Motor Vehicle or Garage Liability)

shall be deemed to include, with respect to such coverages, from the time specified in Clause V of this paragraph (3), the following provision (specified as the Broad Exclusion Provision):

Broad Exclusion Provision.

It is agreed that the policy does not apply:

    I. Under any Liability Coverage, to injury, sickness, disease, death or destruction

        (a) with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

        (b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

    II. Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

    III. Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if

        (a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;

        (b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

        (c) the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

IV. As used in this endorsement:

"hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means source material, special nuclear material or byproduct material; "source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof; "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; "waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof; "nuclear facility" means

(a) any nuclear reactor,

(b) any equipment or device designed or used for (1 separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste, and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material; :

With respect to injury or to destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

V. The inception dates and thereafter of all original policies affording coverages specified in this paragraph (3), whether new, renewal or replacement, being policies which either

(a) become effective on or after 1st May, 1960, or

(b) become effective before that date and contain the Broad Exclusion Provision set out above;
provided this paragraph (3) shall not be applicable to

(i) Garage and Automobile Policies issued by the Company(ies) on New York risks, or

(ii) statutory liability insurance required under Chapter 90, General Laws of Massachusetts,
until 90 days following approval of the Broad Exclusion Provision by the Governmental Authority having jurisdiction thereof.

It is further provided that original liability policies affording coverages described in this paragraph (3), (other than those policies and coverages described in (i) and (ii) above), which become effective before 1st May, 1960, and do not contain the Broad Exclusion Provision set out above, but which contain the Broad Exclusion Provision set out in any Nuclear Incident Exclusion Clause-Liability-Reinsurance endorsements prior to February 4, 1960, shall be construed as if incorporating such portions of the Broad Exclusion Provision set out above as are more liberal to the holders of such policies.

(4) Without in any way restricting the operation of paragraph (1) of this clause it is understood and agreed that original liability policies of the Company(ies), for those classes of policies

(a) described in Clause II of paragraph (2) effective before 1st June, 1958, or

(b) described in paragraph (3) effective before 1st March, 1958,
shall be free until their natural expiry dates or 1st June, 1963, whichever first occurs, from the application of the other provisions of this Clause.

(5) Without in any way restricting the operation of paragraph (1) of this Clause, it is understood and agreed that paragraphs (2) and (3) above are not applicable to original liability policies of the Company(ies) in Canada and that with respect to such policies this Clause shall be deemed to include the Nuclear Energy Liability Exclusion Provisions actually used on such policies by the Company(ies); provided that if the Company(ies) shall fail to include such Exclusion Provisions in any such policy where it is legally permitted to do so, such policy shall be deemed to include such Exclusion Provisions.

2/4/60
#1255

4603

ADDENDUM NO: 1
to the

INTERESTS AND LIABILITIES AGREEMENT

FACULTATIVE CASUALTY EXCESS OF LOSS FOR COMMON ACCOUNT
First Excess - $500,000 Excess $500,000

between

GERLING GLOBAL REINSURANCE CORPORATION, U.S. BRANCH, New York, N.Y. AND THEIR QUOTA SHARE REINSURERS, of the one part
and

GUARANTY REINSURANCE COMPANY, Chicago, Ill.

of the other part.

It is hereby understood and agreed that effective January 1, 1970 the third paragraph of ARTICLE VI, Premium, of the attached Agreement is amended to read as follows:

The Company shall pay to the Reinsurer, in quarterly installments, Reinsurer's proportion of an annual Deposit Premium of $180,000 (One-hundredeightythousand Dollars). Should the Premium for each annual period calculated in accordance with the first paragraph of this Article exceed the said Deposit Premium for each annual period, the Company agrees to pay the difference to the Reinsurer, but should it be less, it is agreed that the Minimum Premium payable to the Reinsurer shall be its proportion of $120,000 (Onehundredtwentythousand Dollars) for each annual period this Agreement is in force.

All other terms and conditions shall remain unchanged.

IN WITNESS WHEREOF the parties hereto, by their respective duly authorized officers, have executed this Agreement, in duplicate, as of the dates undermentioned.

At New York, N.Y.          this          29th    day of    Jan.    1970

GERLING GLOBAL REINSURANCE CORPORATION, U.S. BRANCH
By GERLING GLOBAL OFFICES INC., U.S. MANAGER

_____                    _____
President                                  Secretary

and at    Chicago       this          4  day of Feb    1970

_____                    _____

GERLING GLOBAL REINSURANCE CORPORATION
U.S. BRANCH

*4EC3*

ADDENDUM NO. 1 a

to the

INTERESTS AND LIABILITIES AGREEMENT

FACULTATIVE CASUALTY EXCESS OF LOSS FOR COMMON ACCOUNT
First Excess - $500,000 Excess $500,000

between

GERLING GLOBAL REINSURANCE CORPORATION, U.S. BRANCH
New York, N.Y. AND THEIR QUOTA SHARE REINSURERS, of the
one part

and

GUARANTY REINSURANCE COMPANY, Chicago, Illinois
of the other part.

It is hereby understood and agreed that effective 12:01 a.m. 1st
October 1970 the Argonaut Insurance Company, Menlo Park, Calif., is
substituted as Subscribing Reinsurer for the share heretofore subscribed
to by the Guaranty Reinsurance Company, Chicago, Illinois.

IN WITNESS WHEREOF the parties hereto, by their
respective duly authorized officers, have executed this Agreement,
in duplicate, as of the dates undermentioned.

At New York, N.Y.     this *21st* day of *October*     1970

GERLING GLOBAL REINSURANCE CORPORATION, U.S. BRANCH
By GERLING GLOBAL OFFICES INC., U.S. MANAGER

_____          _____
President                      Secretary

and at *Chicago, Illinois* this *16th* day of *October*     1970

ARGONAUT INSURANCE COMPANY

_____          _____

GERLING GLOBAL REINSURANCE CORPORATION
U.S. BRANCH

*4603*

*1969 - 1970*

ADDENDUM NO. 2
to the

INTERESTS AND LIABILITIES AGREEMENT

FACULTATIVE CASUALTY EXCESS OF LOSS FOR COMMON ACCOUNT
First Excess - $500,000 Excess $500,000

between

GERLING GLOBAL REINSURANCE CORPORATION, U.S. BRANCH, New
York, N.Y. AND THEIR QUOTA SHARE REINSURERS, of the one part
and

ARGONAUT INSURANCE COMPANY
CHICAGO, ILL. 60606

of the other part.

It is hereby understood and agreed that effective January 1, 1971
the third paragraph of ARTICLE VI, Premium, of the attached Agreement is
amended to read as follows:

The Company shall pay to the Reinsurer, in quarterly installments,
Reinsurer's proportion of an annual Deposit Premium of $200,000 (Two-
hundredthousand Dollars). Should the Premium for each annual period cal-
culated in accordance with the first paragraph of this Article exceed the said
Deposit Premium for each annual period, the Company agrees to pay the
difference to the Reinsurer, but should it be less, it is agreed that the
Minimum Premium payable to the Reinsurer shall be its proportion of
$120,000 (Onehundredtwentythousand Dollars) for each annual period this
Agreement is in force.
All other terms and conditions shall remain unchanged.

IN WITNESS WHEREOF the parties hereto, by their respective
duly authorized officers, have executed this Agreement, in duplicate, as of
the dated undermentioned.

At New York, N.Y.                    this    21st    day of October        1970

GERLING GLOBAL REINSURANCE CORPORATION, U.S. BRANCH
By GERLING GLOBAL OFFICES INC., U.S. MANAGER

_____               _____
President                              Secretary

and at *Chicago, Illinois* this    *26th* day of *October*    1970
ARGENAUT INSURANCE COMPANY
*Robert A. Schirmer*

_____
GERLING GLOBAL REINSURANCE CORPORATION
U.S. BRANCH

# GERLING GLOBAL REINSURANCE CORPORATION

### UNITED STATES BRANCH

U. S. MANAGER
GERLING GLOBAL OFFICES INC.

717 FIFTH AVENUE
NEW YORK; N. Y. 10022

December 18, 1970

Argonaut Insurance Company
2 North Riverside Plaza
Chicago, Ill. 60606

Re: Your participation in our 1st Excess
of Loss for Facultative Casualty
Business - File No. 4603

Gentlemen:

Prior to January 1, 1971, all of our excess protection was written for
the common account of Gerling Global Reinsurance Corporation and their
Quota Share Reinsurers. The basic quota share treaty provides
protection for us when Motor Truck Cargo insurance was written in
conjunction with Bodily Injury and Property Damage with a minimum
underlying limit of $2,000,000.00 combined over these three coverages.

We have eliminated the quota share treaty as of January 1, 1971 and it
is our intention to continue to accept this type of business.

We would appreciate it if you would sign the enclosed copy of this letter
as your acknowledgement of this.

Yours very truly,

Ralph Carlsen,
Vice President

Bernd Vogelsang
Secretary

RC:amm
Encl.

Acknowledged: Argonaut Insurance Company

By: Robert A. Schermei Jr

December 31, 1970

TELEPHONE PLAZA 2-1900    CABLE "GERCONCERN"    TELEX

# REINSURANCE AGREEMENT

## FACULTATIVE CASUALTY EXCESS OF LOSS FOR COMMON ACCOUNT
### First Excess - $500,000 Excess $500,000

between

**GERLING GLOBAL REINSURANCE CORPORATION, UNITED STATES BRANCH, NEW YORK, N.Y., ( including the liability of GERLING GLOBAL REINSURANCE COMPANY, TORONTO, ONTARIO, CANADA)**

(hereinafter collectively called the "Company")

of the one part

and

**THE COMPANIES SPECIFIED IN THE RESPECTIVE INTERESTS AND LIABILITIES AGREEMENT TO WHICH THIS AGREEMENT IS ATTACHED**

(hereinafter called the "Reinsurer")

of the other part

WHEREAS the Company is desirous of reinsuring certain of its liability arising under business accepted by it in its Facultative Casualty Department

NOW, THEREFORE, it is hereby agreed by and between the parties hereto one with the other as respects Facultative Casualty business:

GERLING GLOBAL REINSURANCE CORPORATION
U. S. BRANCH

-2-

ARTICLE I

INSURING CLAUSE

(A)  The Reinsurer agrees for the consideration hereinafter appearing to pay
to the Company up to but not exceeding $500,000 (Five Hundred Thousand
Dollars) ultimate net loss each and every accident and/or occurrence any
one original insured for which the Company shall become liable and shall
pay in excess of $500,000 (Five Hundred Thousand Dollars) ultimate net
loss each and every accident and/or occurrence any one original insured
under one or more original policies.

(B)  As respects Products Bodily Injury Liability Insurance assumed by the
Company under Policies containing an aggregate limit of liability, the
Reinsurer agrees to pay to the Company up to but not exceeding $500,000
(Five Hundred Thousand Dollars) aggregate ultimate net loss for which
the Company shall become liable and shall pay in excess of $500,000
(Five Hundred Thousand Dollars) aggregate ultimate net loss in  respect
of each annual period any one original insured under one or more original
policies.

(C)  The Reinsurer agrees to accept motor truck cargo business when written
in conjunction with bodily injury and/or property damage liability in excess
of a minimum combined single limit of $2,000,000 (Two Million Dollars.)

The term "each and every accident and/or occurrence" as used herein
shall be understood to mean "each and every accident or occurrence or series
of accidents or occurrences arising out of any one event" provided that as
respects:

(a)  Products Liability; said term shall be understood to mean "injuries to
all persons and all damage to property of others proceeding from the
use or consumption of one prepared or acquired lot of merchandise or
product";

(b)  All other classes of Bodily Injury Liability; said term shall also be
understood to mean, as regards each original insured, "injuries to one
or more than one person resulting from infection, contagion, poisoning
or contamination proceeding from or traceable to the same causative
agency";

(c)  Property Damage (other than Automobile and Products) risks; said term
shall, subject to provisions (i) and (ii) below, also be understood to mean
"loss or losses caused by a series of operations, events or occurrences
arising out of operations at one specific site and which cannot be attri-
buted to any single one of such operations, events or occurrences but

STERLING GLOBAL REINSURANCE CORPORATION
U. S. BRANCH

-3-

rather to the cumulative effect of same".

In assessing each and every accident and/or occurrence within the fore-
going definition, it is understood and agreed that:

(i)  the series of operations, events or occurrences shall not extend over
a period longer than 12 (Twelve) consecutive months, and

(ii)  the Company may elect the date on which the period of not exceeding
12 (Twelve) consecutive months shall be deemed to have commenced.

In the event that the series of operations, events or occurrences extend
over a period longer than 12 (Twelve) consecutive months, then each
consecutive period of 12 (Twelve) months, the first of which commences
on the date elected under (ii) above, shall form the basis of claim under
this Agreement.

(d)  An occupational or other disease suffered by an employee which disease
arises out of the employment and for which the employer is liable shall
be deemed an accident within the meaning hereof.  In case the Company
shall within a Policy year sustain several losses arising out of such an
occupational or other disease of one specific kind or class, suffered by
several employees of one Insured, such losses shall be deemed to arise
out of one accident.  A loss as respects each employee affected by the
disease shall be deemed to have been sustained by the Company at the
date when compensable disability of the employee commenced and at no
other date.

ARTICLE II

UNDERLYING REINSURANCE AND CO-REINSURANCE

(A)  The Company warrants to retain net for its own account the first $500,000
(Five Hundred Thousand Dollars) ultimate net loss each and every acci-
dent and/or occurrence any one original insured under one or more
policies subject to reinsurances within the GERLING Group of insurance
companies.

Furthermore, the Company is hereby granted permission to carry under-
lying excess of loss reinsurance, it being understood and agreed that in
calculating the amount of any loss hereunder, and also in computing the
amount in excess of which this Agreement attaches, the net loss of the
Company shall not be considered as being reduced by any amount or
amounts recoverable thereunder.

(B)  It is a warranty that the Company shall participate to the extent of 5%
(Five percent) in this Agreement.