**UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In the Matter of the Arbitration Between: | * | |
| GLOBAL REINSURANCE CORPORATION - U.S. BRANCH | * | Docket No: 07 CIV 8196 (KPC) |
| Petitioner, | * | |
| and | * | |
| ARGONAUT INSURANCE COMPANY | * | |
| Respondent. | * | |

and

| | | |
|---|---|---|
| In the Matter of the Arbitration Between: | * | |
| GLOBAL REINSURANCE CORPORATION - U.S. BRANCH | * | Docket No.: 07 CIV 8350 (KPC) |
| Petitioner, | * | |
| and | * | |
| ARGONAUT INSURANCE COMPANY | * | |
| Respondent. | * | |

**MEMORANDUM OF LAW IN SUPPORT OF ARGONAUT INSURANCE COMPANY'S MOTION FOR RECONSIDERATION**

**I.     Introduction**

In the Court's Further Memorandum and Order on Sealed Submissions (the "Order"), the Court noted that its decision to maintain the sealing order as to the decretal portions of the arbitration awards "was a close question" and reserved its "right to revisit the issue." Order at 4. As Respondent Argonaut Insurance Company ("Argonaut")

believes that these issues should be revisited, and in order to preserve the issue for the parties' April 4, 2008 conference with the Court, it hereby moves this Honorable Court, under FRCP 59(e), to reconsider its Order regarding sealing the record, entered February 28, 2008.[1]  For the reasons set forth below, Argonaut respectfully requests that the Court order that the awards shall be unsealed in their entirety.

## II. Argument

As the record reflects, Global moved to confirm the awards well before the expiration of the one-year time period for confirmation provided by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 9.  Argonaut also could have moved to confirm these awards and did not oppose confirmation of either award.  No conclusion can be drawn regarding which party "prevailed" in the arbitration based on which party moved for confirmation.[2]  Under the FAA, "any party to the arbitration may apply ... for an order confirming the award."  *Id*.  *See also* Wollan, Handbook of Reinsurance Law, Sec. 8.09[C] at 8-44.

### A.     There is No Relationship Between the Potential Harms Global Alleges and the Materials That Are Actually In The Court Records.

The Court noted that "GlobalRe has not made a strong showing of the relationship between [very confidential information about projections of past, current and future liabilities as well as privileged claim information exchanged between parties to a retrocessional contract] and [GlobalRe's] proposed redaction to the awards."  Order at 4.

---

[1] Argonaut's motion to reconsider under FRCP 59(e) is timely as although the Order is dated January 4, 2008, it was not entered on the dockets of these matters until February 28, 2008.

[2] In its Order, the Court characterizes the arbitration awards as being "against" Argonaut (Order at 1), but Argonaut does not view them that way, nor apparently does Global as it argues that it would suffer harm if its other retrocessionaires were allowed access to the awards.  Indeed, the Court's conclusion that the awards could "impair GlobalRe's negotiating position with other reinsurers" would not make sense if the awards had been in Global's favor.

Global cannot make a "strong showing" of a relationship because there is no relationship. There are no "projections of past, current and future liabilities" in the records before this Court. Nor is there any "privileged claim information" in the records before this Court. Global asserts that its commutation program will be hampered if information such as hearing transcripts, arbitration exhibits and briefs discussing the details of Global's confidential and proprietary commutation targets and commutation pricing methodologies became a matter of public record. (See, e.g. Declaration of Barry Keogh in Docket No. 07-CV-8196 at ¶¶8, 11.) Once again, none of the listed documents are in the records before this Court.

Global's speculative assertions of potential harm from release of such information is irrelevant to the Court's decision on sealing because neither party has submitted to the Court the material sought to be protected. In short, Global is asking the Court to seal the awards due to a set of facts that could exist in some other case, but do not exist here. If and when such materials are in a court record, that court can consider whether Global has substantiated its alleged potential injuries – but that case is not before this Court.

The Order notes that disclosure of the awards "does present the risk that it will impair GlobalRe's negotiating position with other reinsurers…." (i.e. Global's other retrocessionaires). (Order at 4.) Yet Mr. Keogh's Declarations do not address the risk that the Court noted – no where does he state that Global is concerned that its negotiating positions with its other retrocessionaires will be impaired if the text of the awards are made public. In its brief, Global makes a parenthetical reference that it "will be harmed in its dealings and commutation negotiations with other cedents (as well as its retrocessionaires) if the Court were to" allow the public to see the awards.

(Memorandum of Law of Petitioner Global Reinsurance Corporation – U.S. Branch in Response to the Court's November 28, 2007 Order to Show Cause at 2.)  This parenthetical aside is completely unsupported as Mr. Keogh's Declarations only discuss concerns Global has regarding the perception of its cedents, not its retrocessionaires.[3]

### B.     It Is Not Clear That the Balancing of Public Access and Global's Private Interests Should Weigh in Global's Favor.

Argonaut further believes that in balancing the competing considerations of public access and Global's private interests, the Court underestimated the public interest and overvalued the potential risk to Global.

Argonaut respectfully disagrees with the Court's implication that there is not a strong public interest because the interest "in the relationship between an insurer and its reinsurers is relatively low."  Order at 3.  Without addressing the relative interest of the parties' relationship, Argonaut asserts that the awards that Global wishes to keep from the public eye would be of interest to the reinsurance community.

Commutations occur with increasing frequency in the reinsurance industry. *See, e.g.,* Michael T. Walsh & Maryann Taylor, "Commutations: A Road to Finality," AIRROC Matters, a publication of Association of Insurance and Reinsurance Run-Off Companies, Special Edition – Commutations (Summer 2007), http://www.airroc.org/files/NL_AIRROC%20summer%2007%20web.pdf ("The theme of this Special Edition of AIRROC Matters is a topic of great interest to AIRROC's members and the run-off community at large.  Commutations are indeed one of the most

---

[3] Global has been inconsistent in what it seeks to seal and what it seeks to reveal to the public both within these proceedings and in other pending litigation between the parties in this District.  For example, Global has sought to seal the entire award of the "Phair Arbitration" panel while selectively revealing portions of the outcome of the XOL arbitration.  *See also* Section C *infra,* discussing Global's selective release of information regarding the awards.

4

vital tools to the strategic plans of run-off operations"). Reinsurers who have entered into or plan to enter into commutations as well as their retrocessionaires would almost certainly possess a keen interest in retrocessional treatment of commutation cessions.

Global's assertion that "there is no public interest in accessing these Awards" is disingenuous. Were there no interest among the reinsurance community, then Global would not be concerned about the purported harm that it asserts would befall it if the reinsurance industry was allowed to access the awards. Once again, it is important to note that while Global makes such an argument in its brief, Mr. Keogh's Declarations do not provide any factual support for that argument.

### C. Global's Selective Revelations of Information About the Awards Distorts the Record

As set forth in its briefing on the Court's Order to Show Cause, Argonaut stated that it could not articulate any harm that would come to Argonaut if the entire record in these matters was unsealed. However, Argonaut would suffer harm if the record remains selectively unsealed due to Global's coy redactions.

For example, in docket No. 07-CV-8196 (the "XOL arbitration"), Global proposes to unseal its characterization of the award and certain specific information about the award without unsealing the wording of the award. (See, e.g., Global Petition to Confirm ¶¶ 18-19, Miletic Decl. ¶¶ 6-7 and Ex. I, all of which discuss payment of a certain amount by Argonaut nullifying what Global characterizes as "alternative relief.")[4] Global's selective and coy decision to reveal certain information regarding the XOL award, while advocating that the actual text of the award remained sealed, reveals

---

[4] As Argonaut noted in its brief, p.14, fn.6, in order to be logically consistent, if the awards are to be sealed then Exhibit I and the discussion surrounding it should also be sealed as it reveals information regarding the award.

5

information favorable to Global while concealing the rest of the award. Argonaut will not be harmed by a full release of the records herein, but selective unsealing puts Argonaut at a disadvantage. Global should not be allowed to manipulate the record in this manner.

### III. Conclusion

For the reasons set forth above, Argonaut respectfully requests that the Court reconsider its Further Order on Sealing and unseal the awards and the redacted portions of the pleadings discussing same.

Dated: March 13, 2008
Westport, Connecticut

s/_____
DAN E. LABELLE, DL2779
HALLORAN & SAGE LLP
Attorneys for Argonaut Insurance Company
315 Post Road West
Westport, CT 06880
(203) 227-2855
(203) 227-6992 (Fax)
labelle@halloran-sage.com