-11-

powered to name the second arbitrator, and the respondent shall not be deemed aggrieved thereby. The arbitrators shall designate an umpire within thirty (30) days after both arbitrators have been named. In the event the two (2) arbitrators do not agree within thirty (30) days on the selection of an umpire, each shall nominate one (1) umpire. Within thirty (30) days thereafter the selection shall be made by drawing lots. The name of the party first drawn shall be the umpire.

d) Each party shall submit its case to the Board of Arbitration within thirty (30) days from the date of the appointment of the umpire, but this period of time may be extended by unanimous consent, in writing, of the Board. The Board shall interpret this Reinsurance Agreement as an honorable engagement rather than as a merely technical legal obligation and shall make its award with a view to effecting the general purpose of this Reinsurance Agreement in a reasonable manner, rather than in accordance with the literal interpretation of the language. It shall be relieved from all judicial formalities and may abstain from following the strict rules of law. The decision in writing of the Board or a majority of the Board rendered at the earliest convenient date shall be final and binding upon all parties.

e) The Company and the Reinsurer shall each pay the fee of its own arbitrator and half the fee of the umpire, and the remaining costs of the arbitration shall be paid as the Board shall direct. In the event both arbitrators are chosen by the petitioner, as provided in paragraph c) above, the Company and the Reinsurer shall each pay one half (1/2) of the fees of both of the arbitrators and the umpire, and the remaining costs of the arbitrations shall be paid as the Board shall direct.

## ARTICLE XVI

### HONORABLE UNDERTAKING

This Agreement shall be construed as an honorable undertaking between the parties hereto not to be defeated by technical legal construction, it being the intention of this Agreement that the fortunes of the Reinsurer shall follow the fortunes of the Company.

## ARTICLE XVII

### TAXES (Not Applicable to Domestic Reinsurers)

Notice is hereby given that the Reinsurers have agreed to allow for the purpose of paying the Federal Excise Tax 1% (One Percent) of the premium payable hereon to the extent such premium is subject to Federal

GERLING GLOBAL REINSURANCE CORPORATION
U. S. BRANCH

GL ARG 001442

-12-

Excise Tax.

It is understood and agreed that in the event of any return of
premium becoming due hereunder, the Reinsurers will deduct 1% (One
Percent) from the amount of the return and the Company should take steps
to recover the tax from the United States Government.

## ARTICLE XVIII

### SERVICE OF SUIT (Not Applicable to Domestic Reinsurers)

It is agreed that in the event of the failure of the Reinsurers to pay
any amount claimed to be due hereunder, the Reinsurers hereon, at the re-
quest of the Company, will submit to the jurisdiction of any court of compe-
tent jurisdiction within the United States and will comply with all requirements
necessary to give such court jurisdiction and all matters arising hereunder
shall be determined in accordance with the law and practice of such court.

It is further agreed that service of process in such suit may be
made upon the Superintendent of Insurance of Albany, New York, and that in
any suit instituted against the Reinsurers upon this Agreement, the Reinsurers
will abide by the final decision of such court or of any Appellate Court in the
event of an appeal.

The above-named are authorized and directed to accept service of
process on behalf of the Reinsurers in any such suit and/or upon the request
of the Company to give a written undertaking to the Company that they will
enter a general appearance upon behalf of the Reinsurers in the event such a
suit shall be instituted.

Further, pursuant to any statute of any state, district or territory
of the United States which makes provision therefor, the Reinsurers hereon
hereby designate the Superintendent, Commissioner or Director of Insurance
or other officer specified for that purpose in the Statute, or his successor or
successors in office, as their true and lawful attorney upon whom may be
served any lawful process in any action, suit or proceeding instituted by or on
behalf of the Company or any beneficiary hereunder arising out of this Agree-
ment, and hereby designate the above-named as the person to whom the said
officer is authorized to mail such process or a true copy thereof.

GERLING GLOBAL REINSURANCE CORPORATION
U. S. BRANCH

GL ARG 001443

## NUCLEAR INCIDENT EXCLUSION CLAUSE—LIABILITY—REINSURANCE

(1) This reinsurance does not cover any loss or liability accruing to the Company(ies) as a member of, or subscriber to, any association of insurers or reinsurers formed for the purpose of covering nuclear energy risks or as a direct or indirect reinsurer of any such member, subscriber or association.

(2) Without in any way restricting the operation of paragraph (1) of this Clause it is understood and agreed that for all purposes of this reinsurance all the original policies of the Company(ies) (new, renewal and replacement) of the classes specified in Clause II of this paragraph (2) from the time specified in Clause III in this paragraph (2) shall be deemed to include the following provision (specified as the Limited Exclusion Provision) :

Limited Exclusion Provision.

    I. It is agreed that the policy does not apply under any liability coverage, to injury, sickness, disease, death or destruction with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability.

    II. Family Automobile Policies (liability only), Special Automobile Policies (private passenger automobile, liability only), Farmers Comprehensive Personal Liability Policies (liability only), Comprehensive Personal Liability Policies (liability only) or policies of a similar nature; and the liability portion of combination forms related to the four classes of policies stated above, such as the Comprehensive Dwelling Policy and the applicable types of Homeowners Policies.

    III. The inception dates and thereafter of all original policies as described in II above, whether new, renewal or replacement, being policies which either

      (a) become effective on or after 1st May, 1960, or

      (b) become effective before that date and contain the Limited Exclusion Provision set out above;

provided this paragraph (2) shall not be applicable to Family Automobile Policies, Special Automobile Policies, or policies or combination policies of a similar nature, issued by the Company(ies) on New York risks, until 90 days following approval of the Limited Exclusion Provision by the Governmental Authority having jurisdiction thereof.

(3) Except for those classes of policies specified in Clause II of paragraph (2) and without in any way restricting the operation of paragraph (1) of this Clause, it is understood and agreed that for all purposes of this reinsurance the original liability policies of the Company(ies) (new, renewal and replacement) affording the following coverages:

Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability (including Massachusetts Motor Vehicle or Garage Liability)

shall be deemed to include, with respect to such coverages, from the time specified in Clause V of this paragraph (3), the following provision (specified as the Broad Exclusion Provision) :

Broad Exclusion Provision.

    It is agreed that the policy does not apply:

    I. Under any Liability Coverage, to injury, sickness, disease, death or destruction

      (a) with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

    II. Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

    III. Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if

      (a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;

      (b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

      (c) the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

IV. As used in this endorsement:
"hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means source material, special nuclear material or byproduct material; "source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof; "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; "waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof; "nuclear facility" means

(a) any nuclear reactor,

(b) any equipment or device designed or used for (1 separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

V. The inception dates and thereafter of all original policies affording coverages specified in this paragraph (3), whether new, renewal or replacement, being policies which either

(a) become effective on or after 1st May, 1960, or

(b) become effective before that date and contain the Broad Exclusion Provision set out above;

provided this paragraph (3) shall not be applicable to

(i) Garage and Automobile Policies issued by the Company(ies) on New York risks, or

(ii) statutory liability insurance required under Chapter 90, General Laws of Massachusetts,

until 90 days following approval of the Broad Exclusion Provision by the Governmental Authority having jurisdiction thereof.

It is further provided that original liability policies affording coverages described in this paragraph (3), (other than those policies and coverages described in (i) and (ii) above), which become effective before 1st May, 1960, and do not contain the Broad Exclusion Provision set out above, but which contain the Broad Exclusion Provision set out in any Nuclear Incident Exclusion Clause-Liability-Reinsurance endorsements prior to February 4, 1960, shall be construed as if incorporating such portions of the Broad Exclusion Provision set out above as are more liberal to the holders of such policies.

(4) Without in any way restricting the operation of paragraph (1) of this clause it is understood and agreed that original liability policies of the Company(ies), for those classes of policies

(a) described in Clause II of paragraph (2) effective before 1st June, 1958, or

(b) described in paragraph (5) effective before 1st March, 1958,

shall be free until their natural expiry dates or 1st June, 1958, whichever first occurs, from the application of the other provisions of this Clause.

(5) Without in any way restricting the operation of paragraph (1) of this Clause, it is understood and agreed that paragraphs (2) and (3) above are not applicable to original liability policies of the Company(ies) in Canada and that with respect to such policies this Clause shall be deemed to include the Nuclear Energy Liability Exclusion Provisions actually used on such policies by the Company(ies) : provided that if the Company(ies) shall fail to include such Exclusion Provisions in any such policy where it is legally permitted to do so, such policy shall be deemed to include such Exclusion Provisions.

2/4/60
#1255

GL ARG 001445

4753

## CANCELLATION ADDENDUM

to the

## INTERESTS AND LIABILITIES AGREEMENT

### FACULTATIVE AND TREATY CASUALTY EXCESS OF LOSS
$500,000 Excess $500,000

between

**GERLING GLOBAL REINSURANCE CORPORATION, U.S. BRANCH,**
New York, N.Y., (hereinafter called the "Company") of the one part, and

**ARGONAUT INSURANCE COMPANY, Menlo Park, Cal.**
(hereinafter called the "Subscribing Reinsurer") of the other part.

IT IS HEREBY UNDERSTOOD AND AGREED that this Agreement is
terminated effective at midnight December 31, 1975. The Subscribing
Reinsurer shall be liable for all losses occurring prior to the date of
termination until their final settlement.

IN WITNESS WHEREOF the parties hereto, by their respective duly
authorized officers, have executed this Cancellation Addendum, in
duplicate, as of the dates undermentioned.

At New York, N.Y., this    8th    day of    April,        1976

GERLING GLOBAL REINSURANCE CORPORATION, U.S. BRANCH
BY GERLING GLOBAL OFFICES INC., U.S. MANAGER

_____        _____
Vice President                    Vice President & Secretary

and at *Menlo Park, Cal* this    2ND    day of    August 1976

_____        _____

GERLING GLOBAL REINSURANCE CORPORATION
U.S. BRANCH

GL ARG 001408

## CANCELLATION ADDENDUM

to the

## INTERESTS AND LIABILITIES AGREEMENT

### FACULTATIVE AND TREATY CASUALTY EXCESS OF LOSS
$500,000 Excess $500,000

between

GERLING GLOBAL REINSURANCE CORPORATION, U. S. BRANCH,
New York, N. Y., (hereinafter called the "Company") of the one part, and

ARGONAUT INSURANCE COMPANY, Menlo Park, Cal.

(hereinafter called the "Subscribing Reinsurer") of the other part.

IT IS HEREBY UNDERSTOOD AND AGREED that this Agreement is
terminated effective at midnight December 31, 1975. The Subscribing
Reinsurer shall be liable for all losses occurring prior to the date of
termination until their final settlement.

IN WITNESS WHEREOF the parties hereto, by their respective duly
authorized officers, have executed this Cancellation Addendum, in
duplicate, as of the dates undermentioned.

At New York, N. Y., this    8th    day of    April,        1976

GERLING GLOBAL REINSURANCE CORPORATION, U. S. BRANCH
BY GERLING GLOBAL OFFICES INC., U. S. MANAGER

_____                    _____
Vice President                             Vice President & Secretary

and at                    this        day of            1976

_____                    _____

GERLING GLOBAL REINSURANCE CORPORATION
U. S. BRANCH

GL ARG 001409

4753

ADDENDUM NO. I

to the

INTERESTS AND LIABILITIES AGREEMENT
FACULTATIVE & TREATY CASUALTY EXCESS OF LOSS
$500,000 Excess $500,000

between

GERLING GLOBAL REINSURANCE CORPORATION, U.S. BRANCH,
New York, New York (including the liability of other members of the
Gerling Group of Insurance Companies, to the extent of their interest
in the business the subject matter hereof) (hereinafter called the
"Company") and

ARGONAUT INSURANCE COMPANY, Menlo Park, California

(hereinafter called the "Subscribing Reinsurer").

IT IS HEREBY MUTUALLY AGREED that effective January 1, 1975,
Article VI, Premium, in the underlying Agreement is amended to read
as follows:

"The Company shall pay to the Reinsurer a premium calculated at 0.70%
(Zero point Seventy percent) of its gross net earned premium income
in respect of business accepted by the Company in its Facultative &
Treaty Casualty Department as reported in its annual statement.

By "gross net earned premium income" is meant the earned proportion
of the Company's gross written premium in respect of the subject matter
of this Agreement less cancellations and return of premiums.

The Company shall pay to the Reinsurer annually, in quarterly installments,
a Minimum and Deposit Premium of $50,000 (Fifty Thousand Dollars).
Should the Premium for each annual period, calculated in accordance with
the first paragraph of this Article, exceed the Minimum and Deposit
Premium, the Company agrees to pay the difference to the Reinsurer.

GERLING GLOBAL REINSURANCE CORPORATION
U.S. BRANCH

GL ARG 001410

IN WITNESS WHEREOF, the parties hereto, by their respectively duly authorized officers, have executed this Addendum, in duplicate, as of the dates undermentioned.

At New York, N. Y.  this    6th        day of    March        1975

GERLING GLOBAL REINSURANCE CORPORATION, U. S. BRANCH
By:  GERLING GLOBAL OFFICES INC., U. S. MANAGER

_____          _____
      Vice President                  Vice President & Secretary

and at Menlo Pk, this    7Th      day of    April        1975
CALIF.

_____          _____
      CK-130

GERLING GLOBAL REINSURANCE CORPORATION
U. S. BRANCH

GL ARG 001411

4753

GERLING GLOBAL REINSURANCE CORPORATION, UNITED STATES BRANCH
New York, N.Y.

FACULTATIVE & TREATY CASUALTY EXCESS OF LOSS
$500,000  Excess $500,000

INTERESTS AND LIABILITIES AGREEMENT

IT IS HEREBY MUTUALLY AGREED, by and between GERLING GLOBAL RE-
INSURANCE CORPORATION, U.S. BRANCH, (hereinafter called the
"COMPANY") of the one part and

ARGONAUT INSURANCE COMPANIES, Menlo Park, California

(hereinafter called the "SUBSCRIBING REINSURER"), of the other part, that
the SUBSCRIBING REINSURER shall have a     15 % ( Fifteen percent ----
) share in the interests and liabilities of the "REINSURER" as set
forth in the document attached hereto, entitled FACULTATIVE & TREATY
CASUALTY EXCESS OF LOSS, $500,000 Excess $500,000. The share of the
SUBSCRIBING REINSURER shall be separate and apart from the share of the
other reinsurers, and shall not be joint with those of the other reinsurers, and
the SUBSCRIBING REINSURER shall in no event participate in the interests
and liabilities of the other reinsurers.

This Agreement shall take effect at 12.01 a.m. January 1, 1973 and may be
cancelled as per the attached Agreement. It also supercedes and terminates
the prior Agreement dated in New York, May 6, 1971.

IN WITNESS WHEREOF the parties hereto, by their respective duly authorized
officers, have executed this Agreement, in duplicate, as of the dates under-
mentioned.

At New York, N.Y. this     16th     day of   May     1973

GERLING GLOBAL REINSURANCE CORPORATION, U.S. BRANCH
By GERLING GLOBAL OFFICES INC., U.S. MANAGER

_____          _____
Vice President & Secretary              Vice President

and at Menlo Park Ca this     4th     day of  June     1973

_____          _____
Michael A. Smiley                        R M Schuues Jr

GERLING GLOBAL REINSURANCE CORPORATION
U.S. BRANCH

GL ARG 001412

# GERLING GLOBAL REINSURANCE CORPORATION
### UNITED STATES BRANCH
October 22, 1974

U. S. MANAGER
GERLING GLOBAL OFFICES INC.

717 FIFTH AVENUE
NEW YORK, N. Y. 10022

Argonaut Insurance Companies
Reinsurance Department
250 Middlefield Road
Menlo Park, California 94025

Gentlemen:

> Re: Reinsurance Agreement
> Facultative & Treaty Casualty Excess of Loss
> $500,000 Excess $500,000
> Our File No. 4753    Your Share: 15 %

The Preamble of the above Contract protects Gerling Global Reinsurance
Corporation, United States Branch, New York, N. Y. "including the
liability of Gerling Global Reinsurance Company, Toronto, Ontario,
Canada (hereinafter called the "Company")...".

We recently rearranged our retrocession, reducing the share given to
Gerling Global Reinsurance Company, Toronto, Canada and instead
ceding to Gerling Global General Insurance Company, Toronto, Canada.

We would therefore appreciate your agreement to rephrase this Preamble
to read
> "including the liability of other members of the Gerling Group
> of Insurance Companies, to the extent of their interest in the
> business the subject matter hereof (hereinafter called the
> "Company")...".

The above does not in any way change the gross or net liability or protection
in the above Contract.

Kindly return to us a signed copy of this letter signifying your agreement.

Very truly yours,

10-30-74.

BV:hl

Bernd Vogelsang
Vice President & Secretary

TELEPHONE· PLAZA 2-8900        CABLE "GERCONCERN"        TELEX "GERUMO" NYK 1-2071

GL ARG 001413

EXHIBIT F

# BUDD LARNER

### A PROFESSIONAL CORPORATION
### COUNSELLORS AT LAW

150 JOHN F. KENNEDY PARKWAY, CN 1000
SHORT HILLS, NJ 07078-0999
973.379.4800
FAX 973.379.7734
www.buddlarner.com

Direct Dial: 973-315-4434
E-mail: JLeonard@budd-larner.com

December 30, 2004

<u>DEMAND FOR ARBITRATION</u>

BY TELECOPIER AND CERTIFIED MAIL
RETURN RECEIPT REQUESTED

Argonaut Insurance Co.
c/o Insurance Runoff Consultants
8750 West Bryn Mawr, Suite 1300
Chicago, Illinois 60631

Attention: Mr. Donald J. Buyck

Re: In the Matter of the Arbitration Between Gerling
 Global Reinsurance Corp. - U.S. Branch and
 Argonaut Insurance Co.
 Retrocessional billings in respect of AIG and
 Home Commutations
 Excess Per Risk Facultative Casualty Contract
 First Excess Facultative Casualty Contract
 Fourth Excess Facultative Casualty Contract
 First Surplus Contract
 Quota Share Contract

Dear Mr. Buyck:

 This firm is counsel to Gerling Global Reinsurance Corp. -
U.S. Branch ("U.S. Branch"), located at 1345 Avenue of the
Americas, New York, New York. U.S. Branch hereby gives notice of
its intent to arbitrate against Argonaut Insurance Co. ("Argonaut")
all disputed issues relating to U.S. Branch's claims for payments
of outstanding retrocessional balances owed to it by Argonaut in
connection with U.S. Branch's commutations with its cedents, the
American International Group Companies ("AIG") and Home Insurance

**BUDD LARNER**
A PROFESSIONAL CORPORATION

Argonaut Insurance Co.
December 30, 2004
Page 2

Company ("Home").  The outstanding balances owed to U.S. Branch by Argonaut in respect of the AIG commutation are as follows:

| Contract | Amount |
|---|---|
| Excess Per Risk Facultative Casualty Contract | $491,048.99 |
| First Excess Facultative Casualty Contract | $302,863.55 |
| Fourth Excess Facultative Casualty Contract | $ 37,270.63 |
| First Surplus Contract | $ 96,118.81 |
| Total in respect of AIG Commutation | $927,301.98 |

The outstanding balances owed to U.S. Branch by Argonaut in respect of the Home commutation are as follows:

| Contract | Amount |
|---|---|
| Excess Per Risk Facultative Casualty Contract | $   692,471.64 |
| Quota Share Contract | $   239,022.79 |
| First Excess Facultative Casualty Contract | $1,402,970.52 |
| Fourth Excess Facultative Casualty Contract | $   26,729.75 |
| First Surplus Facultative Casualty Contract | $  159,457.48 |
| Total in respect of Home Commutation | $2,520,652.18 |
| Grand total in respect of both commutations | $3,447,954.16 |

U.S. Branch will also seek pre-hearing security for the full amount due and an award of interest, attorney's fees and other appropriate relief.

    Unless Argonaut applies to stay this arbitration within twenty (20) days after service of this demand, Argonaut shall thereafter be precluded from objecting that a valid agreement was not made or has not been complied with and from asserting in court the bar of a limitation of time.

**BUDD LARNER**

A PROFESSIONAL CORPORATION

Argonaut Insurance Co.
December 30, 2004
Page 3

    U.S. Branch hereby demands that Argonaut appoint and identify its arbitrator within thirty (30) days.  In the event that Argonaut fails to appoint and identify its arbitrator within that time, U.S. Branch will appoint Argonaut's arbitrator on its behalf.

                    Very truly yours,

                    Jeffrey S. Leonard

JSL/pl:531592w

cc:  Joseph J. Schiavone, Esq.
      Marc I. Bressman, Esq.

**BUDD LARNER**

A PROFESSIONAL CORPORATION

COUNSELLORS AT LAW

150 JOHN F. KENNEDY PARKWAY, CN 1000
SHORT HILLS, NJ 07078-0999
973.379.4800
FAX 973.379.7734
www.buddlarner.com

Direct Dial: 973-315-4434
E-mail: JLeonard@budd-larner.com

January 10, 2005

<u>AMENDED DEMAND FOR ARBITRATION</u>

BY TELECOPIER AND CERTIFIED MAIL
RETURN RECEIPT REQUESTED

Argonaut Insurance Co.
c/o Insurance Runoff Consultants
8750 West Bryn Mawr, Suite 1300
Chicago, Illinois  60631

Attention:  Mr. Donald J. Buyck

> Re:  In the Matter of the Arbitration Between Gerling
> Global Reinsurance Corp. – U.S. Branch and
> Argonaut Insurance Co.
> Retrocessional billings in respect of AIG and
> Home Commutations
> Excess Per Risk Facultative Casualty Contract
> First Excess Facultative Casualty Contract
> Fourth Excess Facultative Casualty Contract
> First Surplus Contract
> Quota Share Contract

Dear Mr. Buyck:

This firm is counsel to Gerling Global Reinsurance Corp. –
U.S. Branch ("U.S. Branch"), located at 1345 Avenue of the
Americas, New York, New York.  U.S. Branch hereby gives notice of
its intent to arbitrate against Argonaut Insurance Co. ("Argonaut")
all disputed issues relating to U.S. Branch's claims for payments
of outstanding retrocessional balances owed to it by Argonaut in
connection with U.S. Branch's commutations with its cedents, the
American International Group Companies ("AIG") and Home Insurance

**BUDD LARNER**
A PROFESSIONAL CORPORATION

Argonaut Insurance Co.
January 10, 2005
Page 2

Company ("Home").  The outstanding balances owed to U.S. Branch by Argonaut in respect of the AIG commutation are as follows:

| Contract | Amount |
|---|---|
| Excess Per Risk Facultative Casualty Contract | $491,048.99 |
| First Excess Facultative Casualty Contract | $302,863.55 |
| Fourth Excess Facultative Casualty Contract | $ 37,270.63 |
| First Surplus Contract | $ 96,118.81 |
| Total in respect of AIG Commutation | $927,301.98 |

The outstanding balances owed to U.S. Branch by Argonaut in respect of the Home commutation are as follows:

| Contract | Amount |
|---|---|
| Excess Per Risk Facultative Casualty Contract | $  692,471.64 |
| Quota Share Contract | $  239,022.79 |
| First Excess Facultative Casualty Contract | $1,402,970.52 |
| Fourth Excess Facultative Casualty Contract | $  26,729.75 |
| First Surplus Facultative Casualty Contract | $  159,457.48 |
| Total in respect of Home Commutation | $2,520,652.18 |
| Grand total in respect of both commutations | $3,447,954.16 |

U.S. Branch will also seek pre-hearing security for the full amount due and an award of interest, attorney's fees and other appropriate relief.

Unless Argonaut applies to stay this arbitration within twenty (20) days after service of this demand, Argonaut shall thereafter be precluded from objecting that a valid agreement was not made or has not been complied with and from asserting in court the bar of a limitation of time.

U.S. Branch hereby appoints Richard L. White as its arbitrator.  Mr. White's CV is attached.

**BUDD LARNER**
A PROFESSIONAL CORPORATION

Argonaut Insurance Co.
January 10, 2005
Page 3


        U.S. Branch hereby demands that Argonaut appoint and identify
its arbitrator within thirty (30) days.  In the event that Argonaut
fails to appoint and identify its arbitrator within that time, U.S.
Branch will appoint Argonaut's arbitrator on its behalf.

                                        Very truly yours,


                                        Jeffrey S. Leonard


JSL/pl:531592w
Enclosure
cc:  Joseph J. Schiavone, Esq.
     Marc I. Bressman, Esq.
     Mr. Richard L. White



## Richard L. White
### Certified Arbitrator



IMPROVING
ARBITRATION

## Personal Information

Address: 58 Pine Blvd.
Cedar Knolls, NJ 07927

Phone: 973-292-2421

Attorney: No

## Current Employment

Company: **Integrity Insurance Company in Liquidation**

Position: Deputy Liquidator - Responsible for orderly wind-up of the Estate's obligations affecting claims allowance, reinsurance collections and litigation management.

Address: 49 E. Midland Avenue
Paramus, NJ 07652

Phone: 201 634 7222

Fax: 201 262 0249

Email: deputy@iicil.org

## Previous Employment

Company: **The Resolution Group (a subsidiary of Talegen & Crum & Forster)**

Position: Sr. VP, responsible for establishing financial, systems, and human resources functions for insurance run-off organizations as a result of restructuring plan approved by Insurance Departments of all fifty states.

## Credentials

Certified Public Accountant

## Principal Areas of Insurance/Reinsurance Experience

Financial (Insurance/Reinsurance); Commutation/Collection of Reinsurance; Allocation of Reinsurance.

## Other Information

Investment Income Chapter: Property-Liability Insurance Textbook, The College of Insurance 1984; Mealey's Insurance Insolvency: "Receivership: A Generational Commitment or Expeditious Solution", June 1, 1996; Mealey's Insurance Insolvency: "Aggiornamento: A Tonic

### Years of Experience

**Insurance:** 13

**Reinsurance:** 2

**Other:** Insolvency for 9 years

### Number of Arbitrations

As an Arbitrator: **10**

As an Umpire: **8**

### Completed Arbitrations (Award Issued)

As an Arbitrator: **5**

As an Umpire: **3**

for Insolvencies", October 10, 1996; Mealey's Insurance Insolvency: "Truncation and Reinsurer Objections", May 7, 1997; Best's Review: What Am I Bid? - "An Endgame for Receiverships"; Mealey's Environmental Conference: "Insolvency Clause - "The Emperor's Old Clothes", November, 1997. Mealey's Litigation Reports: "Reinsurance; Alternatives to Estimation of Claims and Acceleration of Reinsurance Recoverables", May 6, 1999 Mealey's Insurance Insolvency Conference: "Early Closing of Insolvent Insurers." Outsourcing to Guarantee Associations, May 2-3, 1999.

## Search Keywords

### Professional Background

- Finance Department
- Former Insurance Company Officer
- Former Reinsurance Company Officer

| Insurance | Reinsurance |
|---|---|
| - Architects & Engineers | - Architects & Engineers |
| - Actuarial | - Actuarial |
| - Agricultural | - Agricultural |
| - Asbestos | - Audit |
| - Audit | - Automobile Liability/Property |
| - Automobile Liability/Property | - Aviation |
| - Aviation | - Claims |
| - Captives | - Construction Defects |
| - Claims | - Director & Officer Liability |
| - Commutations | - Fidelity & Surety |
| - Construction Defects | - Financial Guarantee |
| - Director & Officer Liability | - Hazardous Waste |
| - Disability | - Intellectual Property |
| - Employment Practices Liability | - Professional Liability |
| - Excess/Surplus Lines | - Program Business |
| - Expert Witness | - Run-Off |
| - Fidelity & Surety | - Self Insurance |
| - Financial Guarantee | - Third Party Administrator |
| - Finite Risk Liability | - Treaty |
| - Hazardous Waste | - Underwriting |
| - Intellectual Property | - Workers' Compensation |
| - Marketing | |
| - Professional Liability | |
| - Program Business | |
| - Property/Highly Protected Risk | |
| - Retrospective Rating | |

- Risk
  Purchasing/Retention
  Groups
- Run-Off
- Self Insurance
- Third Party
  Administrator
- Treaty
- Underwriting

**site by**

Ecommerce Solutions, Shopping Cart Software, Web
Content Management, Internet Marketing

**Barry R Keogh**
12/31/04 10:14 PM

To: Rljams@Argonautgroup.com
Subject: RE: AIG and Home Commutation Balances

As discussed, Global Reinsurance Corporation- US Branch and Gerling Global Reinsurance Corporation of America have demanded resolution of these matters, also to include any balances owed respective to the CNA commutation, via arbitration. If you have not received our formal demand, as yet, direct from our counsel, please accept this correspondence as our demand for same- triggering all obligations pursuant to the contract language in our Per Risk, Excess of Loss and Clash treaty programs upon which you participate.

We are represented in this matter, which is distinct from our current pending arbitration, by Joseph Schiavone of the Budd-Larner law firm in Short Hills, New Jersey. Please advise as to your counsel in order that we may expedite an orderly proceeding.

It is unfortunate that you have not been supportive of our efforts in continuing to mitigate our mutual exposures. Your extreme approach contrasts sharply with the good faith efforts demonstrated by substantially all other reinsurers. We have firm belief in the reasonableness and due diligence we have applied, and from this day forward seek full compensation inclusive of accrued interest, our associated costs and other damages as the panel deems fit.

Regards,

```
Barry R. Keogh
Senior Vice President - Claims
Global Reinsurance Corporation of America
1345 Avenue of the Americas
New York, NY   10105

Direct Dial: 212 754-7574
```

----- Forwarded by Barry R Keogh/GGRCA/US on 12/31/2004 10:01 AM -----



"Ijams, Rhonda"
<Rljams@Argonautgro
up.com>

11/23/2004 12:51 PM

To: <barry_keogh@ggrca.com>
cc:
Subject: RE: AIG and Home Commutation Balances

```
Received and thanks.

Rhonda Ijams
Argonaut

-----Original Message-----
From: barry_keogh@ggrca.com [mailto:barry_keogh@ggrca.com]
Sent: Monday, November 22, 2004 1:11 PM
To: Ijams, Rhonda
Subject: Re: AIG and Home Commutation Balances

Rhonda,

Attached is an exhibit that should confirm to you that the discounts
Gerling achieved were of significant value to Gerling and its
reinsurers.
AIG and Home represented over 40% of our historical ITD incurred loss.
```

Additionally, we have concluded commutations with CNA, Great American and
Zurich. We anticipate concluding a significant  commutation with
Hartford/First State in the very near future. We are in active discussions
with Allstate and Fairfax. Commutations with Travelers and Liberty Mutual
are probable for 2005. Obviously, retrocession cash flow from the AIG and
Home commutations is funding these other commutations. We are sufficiently
funded to finance these future commutations without your support.
Reinsurers who are supporting us in good faith are being given priority
consideration for commutation of their remaining liabilities to us once we
have commuted a significant share of our inward exposure. We will not
consider commutation discussion with reinsurers that have not maintained a
good faith relationship with us.

Our counsel are forwarding our response to Don Buyck's letter of 10/22/04,
which essentially advised that Argonaut would not support our commutations.
The purpose of my contacting you last month was to ensure that you were
fully aware of, and in agreement with, your company's position which we
interpret to be a total lack of support of Gerling's mutually beneficial
exit strategy. Please contact me shortly should our assessment be in
error.

Regards,


Barry R. Keogh
Senior Vice President - Claims
Gerling Global Reinsurance Corporation of America
1345 Avenue of the Americas
New York, NY   10105

Direct Dial: 212 754-7574


(See attached file: Actuarial Analysis Home-AIG 2001.xls)

EXHIBIT G

---

In the Matter of the Arbitration Between

Global Reinsurance Company - U.S. Branch,
 f/n/a Gerling Global Reinsurance Corporation - U.S. Branch

Petitioner,

- and -

Argonaut Insurance Company

Respondent.

---

## CONFIDENTIALITY ORDER

1. The parties bound by this order are:

      a. Global Reinsurance Company - U.S. Branch and its parent corporation, subsidiaries, affiliates, agents, employees, officers and directors (Global) and.

      b. Argonaut Insurance Company  and its parent corporation, subsidiaries, affiliates, agents, employees, officers and directors (Argonaut).

2. Except as provided in Paragraph 3 below, and absent written agreement between the parties to the contrary, all briefs, depositions and hearing transcripts generated in the course of this arbitration, documents created for the arbitration or produced in the proceedings by the opposing party or third-parties, final award and any interim decisions, correspondence, oral discussions and information exchanged in connection with the proceedings (hereinafter collectively referred to as "Arbitration Information") will be kept confidential. This Confidentiality Order will remain in effect even after conclusion of the arbitration proceedings.

3. Disclosure of Arbitration Information may be made:  (a)  to the extent necessary to obtain compliance with any interim decisions or the final award herein, or to secure payment from retrocessionaires; (b) in connection with court proceedings relating to any aspect of the arbitration, including but not limited to motions to confirm, modify or vacate an arbitration award; (c) as is necessary in communications with auditors retained by any party, or federal or state regulators; (d) as is necessary to comply with subpoenas, discovery requests or orders of any court; and (e) to the extent Arbitration Information is already lawfully in the public domain.  Any disclosures pursuant to

subparagraphs (a) or (c) shall be accompanied by a copy of this Confidentiality Agreement and an instruction to any recipient to maintain the confidentiality of all Arbitration Information. In connection with any disclosures pursuant to subparagraph (b), subject to court approval, all submissions of Arbitration Information to a court shall be sealed.

If any party is requested or required under subparagraph (d) to disclose Arbitration Information, subject to any applicable legal restrictions, that party will give written notice to the other(s) as soon as possible after the subpoena, discovery request or court order is received. In all contexts, all parties will make good-faith efforts to limit the extent of the disclosures, if any, to be made, and will cooperate with each other in resisting or limiting disclosure of Arbitration Information.

4. For the purpose of conducting this arbitration, Arbitration Information may be disclosed as needed or appropriate to the following persons only:

a. the arbitration panel, who evidence by their execution hereof their undertaking to
    maintain Arbitration Information in confidence as set forth herein;

b. counsel for a party or employees of counsel's law firm who are assisting counsel;

c. employees and agents of the parties for purposes consistent with this agreement;

d. any party's deposition or trial witness;

e. any person retained by counsel for a party to assist in this arbitration; provided
    however, that such person shall agree to be bound by the terms of this Confidentiality
    Agreement as if that person were a party, and shall so acknowledge by executing, prior
    to receipt of or access to Arbitration Information, an affidavit in the form attached
    hereto as Exhibit A; or

f. any non-party deposition or trial witness; provided, however, that such person shall
    agree to be bound by the terms of this Confidentiality Order as if that person
    were a party, and shall so acknowledge by executing, prior to receipt of or
    access to Arbitration Information, an affidavit in the form attached hereto as

Exhibit A.

5. Additionally, for purposes of conducting this arbitration, Limited Arbitration Information may
be disclosed as needed or appropriate to other panels for disputes between the Parties to this
arbitration who evidence their understanding to maintain Limited Arbitration Information in confidence as set forth herein or in a form essentially similar.
Limited Arbitration Information is Arbitration Information excluding this Panel's final award
or order and any interim decisions.

6. If a party is requested or required to disclose Arbitration Information, subject to applicable
legal restrictions, that Party will: 1) notify the other party(ies) in writing as soon as possible
after the subpoena, request or court order is received, to permit the other party(ies) to seek
legal protection against any such disclosure; and 2) tender the defense of that demand to the
party that produced the Arbitration Information, or permit that party to associate in the defense
of that demand.  Unless the demand has been timely limited, quashed or extended, the obligated
party will thereafter be entitled to comply with such demand, request or court order to the
extent required by law.  If requested by any other party(ies), the obligated party will cooperate
(at the expense of the requesting other party(ies)) in the defense of a demand.

7. The parties recognize that serious injury could result to any party and its business if the other party breaches its obligations under this Agreement.  Therefore, each party agrees that all parties will be entitled to seek a restraining order, injunction or other equitable relief if another party breaches its obligations under this Agreement, in addition to any other remedies and damages that would be available at law or equity.

Arbitrator: Richard L. White


Umpire:    Edmond F. Rondepierre


15 May 2006


Arbitrator Thomas M. Daly has noted his dissent to the majority decision to exclude any Interim decisions or final awards or orders from the definition of Limited Arbitration Information.

EXHIBIT H

In the Matter of the Arbitration between

GLOBAL REINSURANCE CORP-
U.S. BRANCH, f/k/GERLING GLOBAL          Edmond F. Rondepierre, Umpire
REINSURANCE CORP. - U.S.BRANCH           Thomas M. Daly, Arbitrator
                                          Richard L. White, Arbitrator

                Petitioner

And

ARGONAUT INSURANCE COMPANY

                Respondent

## AWARD

Having considered the submissions and arguments of Counsel, the testimony of the witnesses and the record in this arbitration the Panel finds and rules as follows:

1. Global Reinsurance Corporation's (Global) claim for recovery on its non-clash related commutation balances of $2,171,997.22 and clash related commutation balances of $575,702.98 is denied.

2. Argonaut Insurance Company's (Argonaut) claim for forfeiture is denied. The commutation transactions do not represent a forfeiture of Global's rights under the retrocessional contracts. The Panel finds that the retrocessional contracts between Global and Argonaut at issue in this arbitration continue in full force and effect.

3. Global's claim for treatment of allocated loss adjustment expense on a pro-rata in addition to limits basis on the Facultative and Treaty Clash contracts is granted.

4. Argonaut is ordered to pay the claims submitted by Global for reinsurance recoverables in the amount of $629,605.28  These recoverables include all outstanding balances at issue in this arbitration relating to claims with pipelines payments, non-commutation balances and all non-commutation clash balances per the attached Schedule "B".

.5. Global may bill Argonaut on a going forward basis for claims involving the Home, AIG, or CNA, including but not limited to the commutation claims that were the subject of its commutation – related billings, as claims are resolved by the Home, AIG or CNA and reported to Global.

6.  Should there be claims billings pursuant to this Award over the next twelve months, any disputes that cannot be resolved by the Parties shall be submitted to the Panel for resolution.  At the end of the twelve month period the Panel will evaluate the necessity of appointing a Special Master to govern any future claim disputes related to this Award.

7. Argonaut may elect to pay without interest, within 45 days of the date of this order, the $2,747,700.20($2,171,997.22 plus $575,702.98) in commutation claims submitted by Global for reinsurance recoverable.   Upon such an election, items 1,2, 5 and 6 of this Award become null and void.  Within 15 days of the date of this order, Argonaut shall notify the Panel and Global whether it will make such an election.

8. Argonaut's payment of the commutation claims in accordance with paragraph 7 above shall serve to terminate, extinguish and forever release any and all future obligations of Argonaut under the Home, CNA and AIG contracts that were in issue in this arbitration.

9.  All payments due Global pursuant to this award must be made within 45 days of the date of this order.

10. All other requests for relief are denied.


                                                        Edmond F. Rondepierre

                                                        Thomas M. Daly

                                                        Richard L. White


                                                        27 June 1007

# **SCHEDULE B**

| Non-Clash Claims | | Due Global |
|---|---|---|
| ATT | $ | 15,015.38 |
| Chromalloy | | - |
| Corning Glass | | - |
| Georgia Pacific | | - |
| Louisiana Pacific | | - |
| Plant Asbestos | | - |
| State of California | | - |
| Westinghouse | | - |
| | $ | 15,015.38 |

| Clash Claims | | |
|---|---|---|
| AC&S | | 118,198.90 |
| Armstrong Cork | | 100,738.50 |
| Colt Industries | | 68,242.00 |
| Combustion Engineering | | 66,840.30 |
| Eli Lilly | | 3,088.95 |
| Flintkote | | 61,009.20 |
| Georgia Pacific | | 15,212.75 |
| Kaiser | | - |
| Owens Corning | | 169,821.35 |
| Plant Asbestos | | 7,934.95 |
| Westinghouse | | 3,503.00 |
| | $ | 614,589.90 |

| | | |
|---|---|---|
| | **$** | **629,605.28** |

EXHIBIT I

## Elizabeth Myers - Global/Argonaut -- XOL Arbitration

| | |
|---|---|
| **From:** | "Hajost, Theresa W." <Hajost@halloran-sage.com> |
| **To:** | <tom@tmdaly.com>, <tom@reconworldwide.com>, <nananded@aol.com>, <deputy@iicil.org>, <deputydawg.integrity@gmail.com> |
| **Date:** | 7/27/2007 4:38 PM |
| **Subject:** | Global/Argonaut -- XOL Arbitration |
| **CC:** | <jleonard@budd-larner.com>, <jschiavone@budd-larner.com>, <vpallotto@budd-larner.com>, "Blumenthal, Daniel A." <blumenthal@halloran-sage.com> |

This is to inform the Panel that Argonaut has elected to pay the amount set forth in Paragraph 7 of the Panel's Award. Argonaut will make that payment on or before the date set forth in the Panel's Award. Argonaut requests that the Panel members acknowledge receipt of this email and thanks the Panel for its services in this matter. Regards, Theresa Hajost

RESPONSES TO:

Theresa W. Hajost, Esq.
Halloran & Sage  LLP
1730 Pennsylvania Avenue, NW
Suite 800
Washington, DC 20006
Telephone:  202-263-4971
Fax:  202-496-9279
mailto:hajost@halloran-sage.com
www.halloran-sage.com

IRS Circular 230 Disclosure:  In compliance with Treasury Department Regulations, we inform you that any U.S. tax advice contained in this communication (including any attachments) is not intended or written to be used by any taxpayer, and cannot be used, for the purpose of: (i) avoiding penalties under the Internal Revenue Code that may be imposed on the taxpayer; or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

Confidentiality:  The information contained in this e-mail message is intended only for the use of the individual or entity named above and is privileged and confidential.  Any dissemination, distribution, or copy of this communication other than to the individual or entity named above is strictly prohibited.  If you have received this communication in error, please notify us immediately by telephone.