```
                                                    1
        84i1gloc
1    UNITED STATES DISTRICT COURT
1    SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x
2
3    GLOBAL REINSURANCE CORPORATION
3    - U.S. BRANCH,
4
4                   Plaintiff,
5
5             v.                     07-CV-8196 (PKC)
6                                    07-CV-8350 (PKC)
6    ARGONAUT INSURANCE CO.,
7
7                   Defendant.       Oral Argument
8
8    ------------------------------x
9                                    New York, N.Y.
9                                    April 18, 2008
10                                   4:26 p.m.
10
11   Before:
11
12                   HON. P. KEVIN CASTEL,
12
13                                   District Judge
13
14                   APPEARANCES
14
15   BUDD LARNER, P.C.
15        Attorneys for Plaintiff
16   BY:  JEFFREY S. LEONARD, ESQ.
16        IVAN V. MILETIC, ESQ.
17
17   HALLORAN & SAGE LLP
18        Attorneys for Defendant
18   BY:  THERESA W. HAJOST, ESQ.
19
19
20
21
22
23
24
25
```

2

```
84ilgloc
 1              (In open court)
 2              (Case called)
 3              THE CLERK:  Is counsel for the plaintiff ready?
 4              MR. LEONARD:  Yes, we are.
 5              THE CLERK:  State your appearance for the record.
 6              THE COURT:  Well, is it all right for you to give your
 7      name?  Is that a problem?
 8              MR. LEONARD:  No, not at all, your Honor.  Jeffrey
 9      Leonard from the law firm of Budd Larner for petitioner Global.
10              MR. MILETIC:  Ivan Miletic from the law firm of Budd
11      Larner.
12              THE COURT:  All right.  Now you are the gentleman who
13      moved for pro hac vice admission for some of your colleagues
14      under seal, is that right?
15              MR. MILETIC:  That's correct, your Honor.
16              THE COURT:  All right.  Good.  Good to meet you.
17              MR. MILETIC:  Nice to meet you, your Honor.
18              THE CLERK:  Is the defendant ready?
19              MS. HAJOST:  Yes.  I'm Theresa Hajost, admitted pro
20      hac vice from the Washington office of the law firm of Halloran
21      & Sage.
22              THE COURT:  All right.  Good afternoon.
23              MS. HAJOST:  Thank you.
24              THE COURT:  This is your application, isn't it?
25              MS. HAJOST:  It is our application for reconsideration
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

3

```
84i1gloc
```

1  of the sealing motion.  And I don't have a whole lot to say
2  about it other than what's in our papers, that your Honor did
3  find, did rule that the awards were judicial documents, and
4  what our motion for reconsideration was pointing out was, from
5  our perspective, none of the alleged harms that were actually
6  in evidence in the declaration of Global's witness, Mr. Keogh,
7  actually match up with the award language.  So if you set them
8  down side by side, there's no cedent information in there,
9  there's no claim information, there's no loss projections or
10  any of the rest of that.  And that's the basis that Global put
11  forward for having those awards sealed.  So we want -- that's
12  why -- You noted in your order that it was a close call and so
13  we kind of took that as an invitation to point out what we saw
14  was an inconsistency there.
15         And there's also matters that these parties are
16  involved in before Judge Pauley, and in that one, the parties
17  have stipulated that the award will be unsealed, although that
18  is -- that matter is still -- the judge has not endorsed that
19  stipulation yet.  So that's not of record in that matter yet.
20         THE COURT:  All right.  Now the docket sheet in this
21  case is a little bit troubling because I'm not seeing some or
22  these orders having been filed.  The date of my order with
23  regard to allowing certain sealing is what now?
24         MS. HAJOST:  That is your order -- further memorandum
25  and order on sealed submissions.  It's dated January 4, 2008,

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

4

84i1gloc
```
 1  but we inquired about it, and apparently it didn't get docketed
 2  until close to the end of February.  Let me find the docket --
 3  actually, I'm not -- We got it close to the end of February but
 4  I'm not sure -- Last time I printed the docket out from Pacer,
 5  I don't see it on there.  And then your original -- oh, I'm
 6  sorry.  I do see it.  It's item number 10.
 7           THE COURT:  Well, I see number 7 where there was a
 8  further memorandum and order on sealed submissions.
 9           MS. HAJOST:  Right.  That's the one I'm referring to.
10  The first one that's ABC v. GEF or...
11           THE COURT:  Right.
12           MS. HAJOST:  That one I don't think ever made it on to
13  the docket.
14           THE COURT:  That's a shame.  Drew, can we take care of
15  that?
16           (Pause)
17           THE COURT:  Here it is.  It's the original order of
18  November 28, 2007.  I thank you for helping me out with that.
19  I will make sure that that gets docketed.
20           MS. HAJOST:  So that's --
21           THE COURT:  It may have been because the record was
22  sealed, no one was allowed to know about it.  I want to make
23  sure that is corrected and, quite frankly, I'm not opposed to
24  it being on Westlaw.  Do you happen to know if it made it onto
25  Westlaw?
```
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

5

84i1gloc

1       MS. HAJOST:  I don't believe it did.  We haven't
2 checked since --
3       THE COURT:  All right.  We'll see whether we can
4 correct that, because I think it's important that the message
5 be out there for others.
6       So now --
7       MS. HAJOST:  But if I could just --
8       THE COURT:  Yes.  Go ahead.
9       MS. HAJOST:  Your second order might be -- if you put
10 that on Westlaw, might be the first published order ruling that
11 an award is actually a judicial document.  We were looking -- I
12 haven't done that research since, you know, since late
13 November, so maybe there is some -- there's some work-up, or
14 decisions since then, but we can find it.
15       THE COURT:  Just so I'm clear, I don't believe an
16 award is inherently a judicial document.  An award becomes a
17 judicial document when, as and if a party applies to the Court
18 to enter a judgment on the basis of that award.  That's when it
19 becomes, in my humble opinion, a judicial document.
20       MS. HAJOST:  That's what I meant.  In other words,
21 that's -- your order, nobody has said just that yet.
22       THE COURT:  All right.  Now then what brings us here
23 together today is that thereafter I did something else, and
24 that's what I'm grappling for.  Help me out here.
25       MS. HAJOST:  You asked us -- you ordered us each to

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

6

84ilgloc

1   have simultaneous briefing on an order to show cause about --
2   in your first order, and so we briefed that and submitted those
3   documents to you in camera.  In other words, our briefs came
4   directly to you and were not -- have not been subsequently
5   unsealed, and their, Global's -- there was simultaneous
6   briefing.  Global's was supported by a declaration as you had
7   ordered and said, if anybody wants anything sealed, you need
8   to -- you need to put it down, say why, show me what you want
9   sealed so I can see redacted, unredacted and etc.
10          And then after -- and that was -- so that was
11  simultaneous briefing, and there were no replies, which bears
12  just slightly procedurally on one of the reasons we brought
13  out -- brought a motion for reconsideration because had there
14  actually been a reply, this probably would have been our reply.
15          THE COURT:  But you'll have to just forgive me here.
16  I'll still lost.  You're moving to reconsider my November
17  ruling?
18          MS. HAJOST:  No.  We're moving to reconsider your
19  January ruling, which got released to us in the end of
20  February.  So it's your -- not your first ruling.  Everybody
21  did everything they were supposed to on that, that we submitted
22  our briefs and declarations.  And then after you reviewed
23  those, presumably you issued this January ruling.  And that's
24  what we're moving to reconsider.
25          THE COURT:  All right.  Do you have a copy of that
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

7

84i1gloc
```
 1   order?
 2              MS. HAJOST:  I have copies of both.  Which one would
 3   you like?
 4              THE COURT:  The January.
 5              MS. HAJOST:  Yeah.
 6              THE COURT:  Okay.
 7              MS. HAJOST:  If I may.
 8              (Pause)
 9              THE COURT:  Thank you.  And what part of that order
10   are you seeking to reconsider?
11              MS. HAJOST:  The portion sealing the awards
12   themselves.  That's all you sealed.  You ordered everything
13   else unsealed but the awards remained sealed, and you said in
14   there that Global, Global's reinsurers -- You said it was a
15   close -- you said it was a close call because --
16              THE COURT:  Right.
17              MS. HAJOST:  -- because their harms that they were
18   seeking didn't really tie back to the award.  And that's our
19   point.  What they have argued is that all this cedent
20   information, confidential cedent information could be released
21   and etc.  None of that's even of record here.  The parties
22   haven't put any of that, any of that in.
23              THE COURT:  What of record?
24              MS. HAJOST:  That nobody has submitted to your Honor
25   at all confidential cedent information, any of these things
```

8

84ilgloc

1  that are listed in Global's -- where Global goes through and
2  says that they -- Let's see.
3       THE COURT: All right. Now perhaps what I should do
4  at this point is, I'll find out from plaintiff's counsel
5  whether they're going to make an application to close the
6  courtroom or such other relief, because at this juncture I now
7  would like to review in camera the decretal portions of the
8  award. They've never been submitted to me. Or have they ever
9  been submitted to me?
10      MS. HAJOST: You have them, your Honor.
11      THE COURT: All right. Well, I would like to see
12  them. If somebody could get them to me.
13      MS. HAJOST: I marked up my copy.
14      THE COURT: Where do I find it in your papers?
15      MS. HAJOST: In their papers, it is -- they are
16  attached to, I believe, the declaration of Barry Keogh.
17      THE COURT: I have it in front of me. Which exhibit?
18      MS. HAJOST: Okay. Let's see.
19      I have the redacted section. Hold on.
20      THE COURT: Yes, that's what I'm dealing with. I have
21  In Camera Review Chambers Copy, but it says, on mine -- this is
22  the in camera chambers review -- it's got a whole bunch of
23  redacted in there, so I guess this was stuff that I wasn't
24  allowed to see.
25      MS. HAJOST: That's the one I have too. I guess that

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

9

84i1gloc

1    must have been what we got served.  I have --

2            THE COURT:  Oh, I have something here.  This is
3    Exhibit H, Award.  Now let me just find...
4            Okay.  It's ten paragraphs?
5            MS. HAJOST:  Well, it depends on which award you're
6    looking at.
7            THE COURT:  I'm looking at something dated June 27,
8    1007.
9            MS. HAJOST:  Right.  He later corrected that by email.
10   Yes, that is the XOL award.  That's matter number 8196.
11           THE COURT:  And there's a Schedule B to it.
12           MS. HAJOST:  And there's a Schedule B.
13           THE COURT:  All right.  Can we work with that for the
14   moment or... because I don't think --
15           MS. HAJOST:  There is another one, but I didn't bring
16   my copy of that.  Perhaps plaintiff's counsel --
17           THE COURT:  Let's see.  Now I haven't... Then there's
18   the supplemental order by Mr. Phair, June 27th.
19           MS. HAJOST:  That's matter 8350, and in front of the
20   supplemental order should be the actual award, chronologically.
21           THE COURT:  Well, okay.  May 23rd, 2007, James J.
22   Phair?
23           MS. HAJOST:  That's it.  That's the award in matter
24   8196.
25           THE COURT:  All right.  Is that what you'd like to

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

10

84i1gloc
1   talk about?
2          MS. HAJOST:  That one and the -- and the one dated
3   1007.
4          THE COURT:  All right.  Since it's the party seeking
5   to maintain the confidentiality's burden, why don't I hear from
6   that party as to why the two-page award -- you can start with

7   the two-page award, dated May 23rd, 2007, which you're asking
8   me to confirm, should remain under seal.
9          MR. LEONARD:  That's the May 23rd one, your Honor?
10         THE COURT:  Yes.
11         MR. LEONARD:  Okay.  It's essentially the argument,
12  your Honor, that we make in our papers.  The award itself does
13  not disclose the amount that Global paid in the commutation,
14  nor does it disclose any particular detailed claim information.
15  The concern that we have, particularly given the tradition in
16  the reinsurance industry, I think, your Honor, both parties
17  cited to various articles promulgated by prominent members of
18  the reinsurance community, that arbitrations are conducted on a
19  confidential basis.
20         THE COURT:  They certainly are.  That's one of the
21  advantages of arbitration; it's conducted confidentially.
22  That's why parties prefer often to go to arbitration.  I fully
23  understand that and honor that.
24         MR. LEONARD:  Right.  I understand, your Honor.  And
25  the concern that we have -- let me go directly to that -- is
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

11

84i1gloc
```
 1    that the award is obviously the culmination, the end point of
 2    an arbitration, and if awards are going to be -- even where
 3    there is not an opposition, let's say, to confirming an award,
 4    if an award is something that's going to be displayed across
 5    the public record, that's going to have a certain chilling
 6    effect on the willingness of our cedents to share information
 7    with us.
 8              THE COURT:  Well, guess what, if it's not opposed, you
 9    don't need to go to court and engage in a judicial confirmation
10    proceeding.  If the award is going to be honored by the other
11    party, there would be no need to come to court.  True?
12              MR. LEONARD:  That's true, your Honor, but there are
13    situations in which you may need to have an award confirmed,
14    and of course there are time limitations on the ability to go
15    into court and have an award confirmed.  In the case of this
16    particular award, for instance, this award is looking
17    forward -- as is the supplemental award that goes with it -- is
18    looking forward to things that are going to be happening in the
19    future.  And if we find ourselves in the future in a dispute
20    with Argonaut over the future aspects of these awards, let's
21    say, your Honor, we need to have -- we need to know that the
22    award has been confirmed so we're in a position to enforce it,
23    should we need to do so.
24              THE COURT:  So tell me, I understand that in the
25    course of the arbitration, there would be testimony presented
```
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

84i1gloc
```
 1   to the arbitrators, evidence, expert testimony, fact evidence,
 2   documents produced, which may contain sensitive business
 3   information which, if disclosed, could be injurious, and it's
 4   certainly federal policy to promote the rational choice of
 5   arbitration, and that's one of the principal advantages of
 6   arbitration, that you can keep such matters confidential.
 7             Now translate that to the ultimate document in this
 8   case, the two-page award, and explain to me what it is about
 9   the award that, when you come into court seeking its
10   confirmation, ought to remain confidential so that a third
11   party would not know what the judge confirmed.
12             MR. LEONARD:  Your Honor, I agree with the point that
13   the Court is getting to here.  The -- I mean, it's a chilling
14   effect, as I described it, and as we described it in our
15   papers, and certainly the case that a party such as Global, the
16   proponent of sealing in this instance, can make with respect to
17   the award is not as strong, not nearly as strong as the case
18   that we would be in a position to make were we seeking in this
19   proceeding or were Argonaut seeking in this proceeding to put
20   before your Honor testimony from the arbitration or some of the
21   documents that were actually introduced in the arbitration that
22   would contain some of the sensitive information relating to the
23   pricing of the commutations and the negotiation of the
24   commutations.  So I certainly agree -- I certainly agree with
25   that point.
```

13

84i1gloc

```
 1            And I should add, your Honor, that with respect to the
 2    8350, which I think is the one that we were just talking about,
 3    that one is indeed unopposed.  With respect to the other
 4    proceeding --
 5            THE COURT:  Well, let's take them one at a time.  So
 6    I've heard you say now several times that you acknowledge that
 7    compared to the type of sensitive information that comes out in
 8    the course of an arbitration, the award is not nearly as
 9    confidential.  I appreciate that observation.  The question
10    before me on this motion is, what is confidential about the
11    final award, what is the harm from the disclosure of the final
12    award?  Whether or not it is more or less sensitive than
13    something else, what is it that is sensitive about the final
14    award that overcomes the presumption of access attaching to
15    judicial documents?
16            MR. LEONARD:  In and of itself, your Honor, I don't
17    believe that there is anything.  It relates again to the
18    chilling effect on cedents in the reinsurance community of
19    seeing one of their reinsurers, Global, in a situation where an
20    award is something that becomes public, and the chilling
21    effect, the slippery slope, if you will, to go to another
22    metaphor, is the concern that, gee, if we are as open in
23    providing information and documentation to this reinsurer
24    Global as we always have been, who knows what we may ultimately
25    have to deal with that will become part of the public record.
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

14

84i1gloc

1  Not in this case, your Honor, but in some other case.
2            So it's not a direct -- I can't stand here and tell
3  you that there's anything -- any of the terms in this
4  particular award that would have that effect.  It's more of a
5  slippery slope or a chilling effect that we get into here if
6  the award, the hallmark, if you will, of the reinsurance
7  arbitration is something that can be made public.
8            THE COURT:  All right.  And that's your argument with
9  regard to 8350.  Do you have a different argument with regard
10  to 8196?
11            MR. LEONARD:  8196 is different, your Honor, because
12  there is a recent dispute that has arisen between the parties,
13  which we discussed in our joint letter to the Court in advance
14  of this conference.  And that dispute is now the subject of a
15  motion that we filed with the arbitration panel yesterday.  And
16  in the event the arbitration panel decides that they believe
17  they're functus officio and cannot entertain our application,
18  we will then in all likelihood move before your Honor to remand
19  the arbitration to that panel for clarification before the
20  award is confirmed.
21            My point being that in the case of 8196, there is
22  likely going to be a contested proceeding and the Court is
23  going to have to exercise its judicial function, of course, in
24  order to resolve that.  So these documents and perhaps other
25  documents will clearly become judicial documents at that point,

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

15

84i1gloc

1  and the calculus that the parties will have to evaluate and
2  ultimately the Court will have to evaluate in ruling on
3  confidentiality and sealing obviously will be a different
4  calculus.
5          THE COURT:  Well, certainly the issue is resolved by
6  withdrawing the motion to confirm the award in 8196.  That
7  makes it nice and easy.  Is that something you want to do?
8          MR. LEONARD:  I think the concern that we have doing
9  that, your Honor, is that the award is dated June 27th, and
10  under the FAA, at least, there is one year in which to confirm.
11  We believe that this matter falls as well under the New York
12  convention, which would have a three-year period to confirm.
13  But I think that the prudent course and the course that I would
14  recommend -- I would want to follow here would be to not rely
15  on the three years but rather to go with the one year.  And I'm
16  concerned that by the time the motion is briefed before the
17  panel and the panel makes a decision on it, we may be
18  perilously close or perhaps past June 27th.  And I'm
19  reluctant for that reason to withdraw the petition.
20          THE COURT:  Perfectly reasonable position for you to
21  take.  And I fully understand it.  But that then gets us back
22  to, this is a live application to the Court to confirm the
23  award.  That's a request to, in effect, to convert the award
24  into a final judgment of a United States district court.  And
25  therefore, it would seem to me the award itself remains a

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

16

84i1gloc

1  judicial document to which the presumption attaches which one
2  can overcome, as I read the caselaw, upon the proper showing.
3  And perhaps you can.  But that seems to be where we are now.
4      MR. LEONARD:  The only point that I would make, your
5  Honor, in regards to that is this:  I think that there's a
6  question as to whether an award in an unopposed confirmation
7  proceeding is a judicial document or, if it is, the extent to
8  which it is a judicial document or the extent to which the
9  public right of access should attach to that document.  And
10  I'm -- the reason I'm thinking of that in particular -- well,
11  there's only two reasons.
12      One is that I think we all know -- and your Honor
13  wrote about it in one of your orders here -- that there's a
14  tension between two important federal policy principles, one
15  being the strong encouragement that we -- that we want to pay
16  to the arbitral process, and two being the strong presumption
17  of the public right to access to what is going on in our
18  courts.  Two very important principles.  And in resolving those
19  two principles, I think we need to be careful to accord proper
20  weight to each of them.
21      The second point I'm thinking of is -- relates to the
22  recent Supreme Court decision which we cite in the footnote I
23  think in a brief that we submitted to your Honor at the end of
24  March on the sealing issue.  I think it was our opposition to
25  reconsideration motion.  It's the Bell -- excuse me, it's the

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

```
     84i1gloc
 1   Hall v. Mattel case, which is a March 25th, I think --
 2           MS. HAJOST:  Footnote 1.
 3           MR. LEONARD:  Thank you.  It's footnote 1 in our
 4   brief, your Honor.  And in that case, you know, it concerned
 5   whether, under the Federal Arbitration Act, Section 9, the
 6   parties can alter the standard that courts have to apply in
 7   deciding confirmation petitions.  And in that decision the
 8   court made it very clear that a district court's function under
 9   Section 9 of the Federal Arbitration Act is really a very
10   limited one to determining whether the -- whether the statutory
11   conditions to confirmation have been met or not, and those
12   statutory conditions are very simply whether there is a pending
13   application to vacate or to modify or to correct the award.  So
14   in situations where you don't have such an application, the
15   inquiry that a district court engages in in deciding a
16   confirmation petition is a very limited one.
17           Now contrast that with a situation such as we may have
18   in proceeding 8196, I don't know yet, but we may have a
19   situation where there really will be a contest that the Court
20   is going to have to resolve.
21           THE COURT:  You know, the Second Circuit has held that
22   a district court ought not grant a petition to confirm on
23   default.  Are you familiar with the caselaw in that arena?
24           MR. LEONARD:  I read the case this morning, your
25   Honor.
```

84ilgloc

```
 1              THE COURT:  And so it puts me in a bind.  Even
 2    consistent with what we're talking about today, I can't say,
 3    well, this is a petition to confirm, I've confirmed that
 4    nobody's opposed it, I need not crack the cover on this because
 5    it's an unopposed petition to confirm.  The circuit tells me
 6    that I should look at the agreement to arbitrate, the award,
 7    the basis on which the award was made, look at the record.
 8    These are things I'm supposed to do, even when it's what I
 9    usually refer to as one hand clapping.
10              And there would be no reason for you to know this, but
11    on many occasions I sit there in chambers and I do exactly that
12    and I issue written orders on the steps I've taken in order to
13    reach that conclusion.  It's not the most pleasant thing I do
14    in my job, it's not the most difficult thing I do in my job,
15    but if I don't get the record in the arbitration, I enter an
16    order requiring that I get it, because I have to look at these
17    things in order to comply with the Second Circuit caselaw in
18    that arena.
19              MR. LEONARD:  Yeah.  I mean, I would question whether
20    that aspect of that Second Circuit decision is still good law
21    in light of, you know -- in light of the recent Supreme Court
22    decision, your Honor.
23              But, you know, that Second Circuit decision is also
24    distinguishable in other respects as well.  I mean, in that
25    case, even though the Court was presented with a default
```

84i1gloc
1  judgment situation, we know that the petition was actually a
2  contested proceeding, and the respondent in that case basically
3  found itself in a "gotcha" situation or a technical slip
4  situation, where they didn't do something that perhaps they
5  should have done.  And in fact the Second Circuit even said in
6  their decision that, you know, we should -- we should be
7  willing to cut the respondent a little bit of slack here
8  because there really isn't any caselaw on this, on this
9  particular subject.  So it was a situation where there really
10 was a contest between the parties.  The only problem was that
11 perhaps the respondent was not in a position procedurally to
12 advance its position with respect to that --
13        THE COURT:  Really, with all due respect, I don't
14 think that's the way the Second Circuit writes its caselaw.
15 They could have written it narrowly to address that particular
16 petitioner and respondent and fashioned a rule that was
17 applicable in limited contexts.  I read the case as containing
18 language which is rather sweeping, and my experience has been
19 that that kind of language is not used unless it is thought
20 through and intended.
21        MR. LEONARD:  You're referring, your Honor, to the
22 language that a district court should really treat it as though
23 it were an unopposed summary judgment motion, in which the
24 destruct court is obligated to review the record.
25        THE COURT:  Exactly right.  Exactly right.  I was
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

20

84i1gloc

```
 1    going to go looking for the case, but it sounds to me like you
 2    probably have it nearby.
 3            MR. LEONARD:  I think I do.
 4            THE COURT:  I have a mental block.  I'll have it in a
 5    second.
 6            MR. LEONARD:  The D.H. Blair case.
 7            THE COURT:  That sounds right.
 8            MR. LEONARD:  2006 decision.
 9            THE COURT:  It is D.H. Blair, 462 Fed.3d 95, 109.
10    "Default judgments in confirmation vacatur proceedings are
11    generally inappropriate."
12            Anyway, maybe we're a little bit far afield.  I want
13    to give you a fair chance to argue that there is something in
14    the final award in 8350 which overcomes the presumption of
15    access.
16            MR. LEONARD:  Well, I think 8350 we were discussing at
17    the outset of --
18            THE COURT:  The other one was 8196.
19            MR. LEONARD:  8350 is the one that is signed by
20    Mr. Phair, or his name appears here.
21            THE COURT:  8350 is the Phair one and 8196 is
22    Rondepierre.
23            Well, I'll give you the opportunity on either one of
24    them to tell me why the presumption of access is overcome by
25    the need to maintain confidentiality.
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

21

84i1gloc

1    MR. LEONARD:  I don't -- I don't have anything further
2    to add to what I -- to the arguments that I already made to
3    your Honor.  The only thing I would reiterate again is that the
4    8196 is in a -- is in a different situation because I

5    anticipate that that is going to be the subject of contested
6    motion practice before your Honor, and I guess in that regard
7    I'm aware that your Honor's rules require a premotion
8    conference and I, you know, if the Court wants us to submit a
9    letter requesting that, when and if the time comes --
10    THE COURT:  Send a letter and lay out what the grounds
11    for the motion would be, and then sometimes I get a response
12    and it turns out that there really isn't any serious opposition
13    to it.  And if there is serious opposition, when you all come
14    in on the conference, it's a more informative conference.  So I
15    would ask you to do that.
16    MR. LEONARD:  We would like the Court to hold off, or
17    hold in abeyance confirming the award in 8196 until either the
18    panel issues its clarifying order, in which event we will
19    probably amend our petition, your Honor, to ask that the Court
20    confirm the award as clarified, or until the panel says no,
21    we're not going to clarify it because we think we're functus
22    officio, in which event we'll move before your Honor for
23    remand.
24    THE COURT:  Any objection to that from Argonaut?
25    MS. HAJOST:  Well, I'm not sure what he's asked.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

22

84i1gloc
```
 1   You're just asking to withhold the confirmation at this
 2   point --
 3           THE COURT:  Well --
 4           MS. HAJOST:  -- or are we talking about withholding a
 5   ruling on the motion to seal?
 6           THE COURT:  No.  We're talking about on 8196.  We're
 7   taking a slight detour.  8196, any objection to my holding off
 8   on the motion to confirm?
 9           MS. HAJOST:  Well, I think it's clear, I think it
10   could be confirmed right now, so I -- I realize that Mr. --
11   that Global says there's a -- there's an issue.  I think this
12   language, when you look at the language of this and it says
13   that "terminate, extinguish or forever release any and all
14   future obligations," I don't think there's anything to clarify
15   there.
16           THE COURT:  How about on 8350, is there any reason for
17   me not to confirm that award?
18           MS. HAJOST:  No.
19           THE COURT:  Okay.  All right.  And certainly Global is
20   of that view as well.
21           MR. LEONARD:  On 8350, yes, your Honor.
22           THE COURT:  All right.  Now I'm curious.  You can help
23   me out with this.  What form would a final judgment take, if
24   not confirming the award and referencing its terms?
25           MR. LEONARD:  It would confirm the award, identifying
```

23

84i1gloc
```
1   the parties, the arbitration panel members, and the date of the
2   award.
3               THE COURT:  And how does a county clerk in a county in
4   which that judgment is filed know the terms of that judgment?
5               MR. LEONARD:  I'm not sure I understand your Honor's
6   question.
7               THE COURT:  Well, the judgment is a lien on the
8   property of a party in any county in which that judgment is
9   filed.
10              MR. LEONARD:  Correct, your Honor.  I understand your
11  point.
12              THE COURT:  And how would anyone know, how would a
13  creditor know, how would anyone know what the terms of that
14  judgment was?
15              MR. LEONARD:  Your Honor, we're not seeking a money
16  judgment on these awards.  The awards have been paid by
17  Argonaut to the extent there were payments that they were
18  required or directed to make.  We're not seeking any monetary
19  relief in confirming these awards.
20              THE COURT:  Well, I'm curious.  Let's say somebody
21  violates the terms of the award.  Are you entitled to
22  injunctive relief?  Are you entitled to punish it by contempt?
23              MR. LEONARD:  Well, if that were to happen, your
24  Honor, the answer to that is yes.  The mechanism to enforce an
25  award is through the courts, of course, and if there were a
```
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

24

84i1gloc

```
 1   situation like that that were to arise, then we would have to
 2   come in to a -- court, whether it's state court or federal
 3   district court, and we would come in and present the order and
 4   judgment confirming the award, and in that proceeding, we would
 5   have to bring out the award itself and whatever else we needed
 6   to bring before the court in order to establish our case.  And
 7   there may be confidentiality sealing issues that either we or
 8   Argonaut's counsel would raise in connection with that future
 9   proceeding.  That's a possibility.
10             THE COURT:  Well, I must say that it just tilts me
11   with greater force to the conclusion that the terms of an
12   award, the violation of which is punishable by contempt of
13   court, ought to be a matter of public record.  When the Court
14   lifts its pen to require a party to do something under pain of
15   civil and criminal contempt, that's a judicial act which a
16   member of the public, a person interested in what's going on
17   with your company or the other company to the arbitration, or
18   with the insurance industry in general, or what federal judges
19   do with their time, ought to be able to see what the judge has
20   ordered somebody to do.
21             MR. LEONARD:  Well, that's interesting.  I mean, I'm
22   not sure if that is a right or -- that's a right of access that
23   should necessarily apply at that point in time, where no one
24   knows if there's going to be any need for any enforcement down
25   the road in the future in a proceeding for any injunctive
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

84i1gloc
1   relief or anything else.  I certainly would agree with your
2   Honor that that would be very much on the table as an issue, as
3   a question, sealing confidentiality, at the point, if any, at
4   which one of the parties had reason to go into court and --
5   and -- on an allegation that the other side was in contempt or
6   had otherwise breached the award.
7           THE COURT:  But what if somebody with the utmost
8   punctiliousness strictly rearranges their affairs to comply
9   with a court order?  Why isn't that something that the public
10  has a right to know, that someone has rearranged their affairs
11  in strict compliance with a judicial order issued by a United
12  States district court?  I'm not so sure that it only becomes
13  relevant when they disobey the order and it's not relevant when
14  they obey the order.
15          MR. LEONARD:  Well, that's a fair argument, your
16  Honor.  You know, Argonaut cites in their reconsideration

17  motion, just the reply papers, not in the main papers, but
18  their reply papers they cite a number of cases in which the
19  district court -- I think they were mostly unpublished
20  decisions, but that doesn't matter -- in which a district court
21  had either denied orders sealing papers in whole or in part or
22  it had unsealed papers that had previously been sealed.  And
23  there are cases on both sides, cases that go both ways, and the
24  cases that we cited in -- I guess it's three briefs at this
25  point that we've submitted to the Court in connection with this
            SOUTHERN DISTRICT REPORTERS, P.C.
                    (212) 805-0300

26

84i1gloc

```
 1   action, cases we cited, you know, the cases over the last five
 2   years, they go the other way, including the Second Circuit
 3   decision in the DiRussa case, in which the court held that the
 4   district court did not abuse its discretion in sealing
 5   everything but the court orders and opinions, where the
 6   underlying arbitration was conducted pursuant to a
 7   confidentiality agreement.
 8           So there are cases to be sure, your Honor, that do go
 9   both ways on that.  My point is, though, that I agree with the
10   Court that the -- that the order and judgments and the opinions
11   that your Honor renders in this case, I think that those do
12   stand under -- on a different footing under the law than the
13   underlying papers, the record that is before the Court.
14           THE COURT:  Yes, but certainly there is a federal
15   policy against a judicial order incorporating another document
16   by reference, and I have in mind, I think it's Rule 65, if I'm
17   right about that, of the Federal Rules of Civil Procedure, and
18   I do realize that it's with regard to injunctions, and I'm not
19   even saying that it -- Well, here.  Maybe it does strictly
20   apply.  65(d), content and scope of every injunction and
21   restraining order.  "Every order granting an injunction and
22   every restraining order must," and then, "state the reasons why
23   it's issued; state its terms specifically," and (c) is the
24   provision I have in mind: "describe in reasonable detail, and
25   not by referring to the complaint or other document, the act or
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

27

84i1gloc

1   acts restrained or required." And I'm not so sure that a final
2   judgment of a district court enjoining somebody that says
3   you're enjoined from doing what that sealed piece of paper says
4   you can't do or you're enjoined to do what that sealed piece of
5   paper says you should do, complies with 65(d).
6           MR. LEONARD:  I don't know that -- I don't think that
7   a judgment confirming the arbitration awards here is in the
8   nature of an injunction, your Honor.  I don't see that.  I
9   don't see how the --
10          THE COURT:  Well, then how do you get to the
11  conclusion that if you don't comply with its terms, it's
12  punishable by contempt?
13          MR. LEONARD:  Well, we'd have to get into the awards
14  themselves, perhaps, to consider whether and how that could
15  arise.
16          THE COURT:  But I mean, we talked a little bit before
17  that if somebody didn't comply with the -- with the judgment
18  and the judgment incorporated the award by reference, you'd
19  say, your Honor, you signed a final judgment ordering somebody
20  to comply with the award, the award required them to go stand
21  on their head for a half an hour or wear a funny hat or pay
22  certain money or rearrange how they did business, they didn't
23  do it, and now we seek the remedy of contempt for their failure
24  to comply with the terms of the final judgment.  And I really
25  haven't looked into it, but it would seem to me that, what else

28

84i1gloc
1  does 65 mean; does it mean that if there was a permanent
2  injunction that's included in a final judgment of the Court,
3  because the permanent injunction is in the Court's final
4  judgment, that it's exempt from 65(d)?  I don't think so.
5          MR. LEONARD:  Your Honor, it's hard for me to think of
6  a situation -- I was just glancing at the award in 8350, and
7  it's hard for me to conjure a situation in which Global would
8  find itself before your Honor or some other judge in some other
9  court on -- in a proceeding for contempt against Argonaut or
10 for some other relief against Argonaut for not complying with
11 the -- for not complying with the award, because the chief
12 going-forward aspect of the award in 8350 relates to what's
13 going to happen with future claims.  And the panel does retain
14 jurisdiction for a period of time to deal with that issue, and
15 subsequent to that period of time future claims would fall well
16 within the ambit of the arbitration clause within the contracts
17 that -- reinsurance treaties between the parties.
18         THE COURT:  All right.  We're chasing either other
19 around the block, Mr. Leonard.  I'm going to say, what do you
20 need a judicial decree confirming it for?  So if your remedy in
21 the event of a violation is not to come into court but to go
22 back to the arbitrators, then I'm not so sure why you need it
23 confirmed.
24         MR. LEONARD:  Well, because this is our opportunity to
25 confirm it because we don't -- after one year or certainly
                SOUTHERN DISTRICT REPORTERS, P.C.
                       (212) 805-0300

29

84ilgloc

1  after three years, we're not in a position to do so.  And
2  unfortunately, your Honor, the relationship between Argonaut
3  and my client -- I think Argonaut's counsel would probably
4  agree with me on this -- is -- has been analogized to The War
5  of the Roses.  Neither side trusts each other.  And I'm sure
6  you hear this from many litigants that come before the Court.
7  But I -- it is really out of prudence that I believe the award
8  should be confirmed.  But can I stand here and tell your Honor
9  right now that I can anticipate a situation in which we would
10 need to go into a court and rely on that confirmation in order
11 to obtain some particular kind of relief in the future?  No, I
12 can't.  I can't conjure such a situation.
13           THE COURT:  All right.  Let me bring this to a close
14 by saying:  Having carefully considered the matter -- and I
15 will make sure that I write an order that is available -- that
16 the arbitrators' awards in 07 Civ. 8196 and 07 Civ. 8350 are
17 unsealed.  There will be a written order to that effect.
18           What else can I help you with?
19           MR. LEONARD:  I think the only issue that might still
20 be open, your Honor, subject to my -- Ms. Hajost's view, would
21 be on 8196, where we had asked that your Honor refrain from
22 confirming the award until this issue of clarification has run
23 its course.
24           THE COURT:  I'll refrain for the moment.  I didn't say
25 I'll refrain until this thing has run its course.  I'll refrain

30

84ilgloc

1  for the moment.  I won't do anything in the immediate course.
2  Get back to me on 8196 by July 11th and tell me where you
3  are.
4           MR. LEONARD:  That's fine, your Honor.  And if we're
5  in a position to do so, we'll write to your Honor before then
6  asking for a premotion conference.
7           THE COURT:  That will be just fine.
8           MR. LEONARD:  Thank you, your Honor.  We appreciate
9  your help, Judge.
10          THE COURT:  Anyway, I've enjoyed this issue.  It's
11 been a fun one and I found it very interesting, intriguing, all
12 the way through.  And I realize, you know, there are
13 consequences.  I've thought about it, and I respect everybody's
14 viewpoint on this, and maybe the law will be further clarified
15 in this area by others of a higher paying rate.
16          MR. LEONARD:  Thanks, your Honor.
17          THE COURT:  Have a great weekend.
18          MR. LEONARD:  Thanks.  You too, your Honor.
19          MS. HAJOST:  Thank you, your Honor.
20                          oOo
21
22
23
24
25